**SINGER et al. v. FRIEDMAN et al. ***
No. 6624.

United States Court of Appeals for the
District of Columbia.

Decided July 6, 1936.

Robert H. McNeill and Samuel Lebowitz, both of Washington, D. C., for appellants.

Alfred M. Schwartz and Rudolph H. Yeatman, both of Washington, D. C., for appellees.

*Writ of certiorari denied 57 S. Ct. 116, 81 L. Ed. ——.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a decree of the lower court dismissing a bill of complaint brought by appellants to obtain a dissolution of a partnership; a receiver for its property; an accounting and recovery of property fraudulently withheld from it; and for general relief in the premises.

The case was begun by the filing of a bill in equity by the appellants as plaintiffs below. A motion was made by appellees as defendants below to dismiss the bill of complaint as amended upon the grounds that it failed to disclose a cause of action in equity in favor of the plaintiffs and that the claims set out in the bill were barred by laches. The court sustained the motion and dismissed the bill. Whereupon, the present appeal was taken.

It is set out in substance in the bill of complaint that on April 2, 1928 the appellants, Singer and Niestadt, together with the appellee Friedman, organized a partnership under the name of Friedman, Singer & Niestadt for the purpose of engaging within the District of Columbia in the real estate and construction business. Apparently no written contract was entered into by the parties, and the amount of capital invested in the business is not stated in the bill, nor the proportion of such investment, if any, by the respective members of the firm, and by implication it appears that all of the partners actively engaged in the management and conduct of the partnership affairs. It is alleged in the bill that the appellee the Munsey Trust Company, hereinafter called the trust company, a banking and trust company located in the District, became the trustee and fiduciary agent of the partnership. The partnership kept its current accounts with the trust company and employed it in the sale of securities received in real estate transactions and in similar affairs.

In April, 1931, the partnership was dissolved by a written agreement executed by all of the partners. In this agreement it was set out that the parties as partners owned certain properties and other assets now held by the trust company under an assignment theretofore made, which assignment specifically sets forth all the property and assets of the partnership, and that the partnership was indebted unto the

trust company for loans and other advances theretofore made to it and the partners desired to be released from the partnership and terminate the same. It was then agreed that the partners Singer and Niestadt should assign all their interest in all property and assets, conveyed to the trust company and then held by it, to Friedman, and the latter, in consideration thereof, agreed to pay Singer and Niestadt the sum of $8,000, payable $6,000 in cash and $2,000 in a promissory note dated April 10, 1931, payable monthly at the rate of $100 per month. Friedman also agreed to release Singer and Niestadt from all responsibility or liabilities arising out of the partnership indebtedness and to protect and save them harmless from any and all liability arising by virtue of the indebtedness of the partnership to the trust company, and to exhibit to them all notes theretofore signed by them in connection with the partnership marked canceled and paid. The parties agreed to execute mutual releases releasing each other from all claims of every character arising by virtue of the partnership agreement and to release the trust company from any and all claims arising by virtue of the aforesaid trust, and that upon the consummation of such agreement the partnership should stand dissolved and terminated.

Thereupon, the partners Singer and Niestadt in consideration of the payment of $8,000 to them, the receipt of which they acknowledged, released, remised, and forever discharged Friedman and the trust company from all claims of any and every character either at law or equity which the partners Singer and Niestadt then had or might have against them arising out of the said partnership.

It is stated in the bill that at this time the assets of the partnership were as follows:

(1) A sum of $35,000 realized from the sale of a trust note to one McGarrity.

(2) Lots 29 and 33, and part of lot 32, in square 205, same being premises 1908, 1910 Fourteenth street, and 1407, 1409, and 1411 T Street, N. W., Washington, D. C. The value of this property was stated to be $65,000 subject to a first trust of $45,000 due to the trust company.

(3) Lot 24, square 642, Washington, D. C.

(4) Lots 32 and 35, square 5601 Nichols avenue and S Street, S. E., Washington,

D. C. This property was stated to be of the value of $100,000, subject to a first trust of $75,000 held by the trust company in favor of the partnership; foreclosed by the trust company, bringing $65,000 at foreclosure sale; property purchased by Friedman; received as compromise for deficiency in the selling price $7,500.

(5) Lot 85, square 190, premises 1512 U Street, N. W.

It is claimed in general terms by the plaintiffs below that at the time of these agreements the partnership had a deposit with the trust company estimated at $110,000 and owed the trust company a sum estimated at $90,000.

It appears that on May 29, 1931, Singer and Niestadt made and delivered to Friedman their deed conveying parcels numbered 2, 3, and 5, supra; that the property was deeded and conveyed to Friedman upon the consideration of the payments made to the grantors as aforesaid. The conveyances included all of the real estate properties above described as owned by the partnership which remained unforeclosed.

In the month of July, 1935, the bill of complaint in this case was filed in the lower court wherein the facts above recited were set out in substance, and it was alleged by the plaintiffs Singer and Niestadt that they had been induced to enter into the agreement aforesaid whereby the partnership was settled and their interest therein conveyed to Friedman, and their claims, if any, against Friedman and the trust company had been released by reason of fraud perpetrated upon them by Friedman and the trust company acting conjointly, who denied the plaintiffs information concerning the actual financial standing of the partnership and refused when requested to exhibit to plaintiff a statement of the transactions of the partnership with the trust company although requested so to do, and plaintiffs alleged that they did not discover the facts showing the fraud complained of until in May, 1935, although they had previously entertained suspicions of the existence of such frauds and in the year 1934 had employed a lawyer to investigate the matter, and upon his failure to do so had employed other counsel who brought the present suit.

The court sustained a motion to dismiss the foregoing bill upon the ground that it was without merit and that the cause stat-

ed therein was barred by the statute of limitations and by laches.

█ We are of the opinion that the decree of the lower court dismissing the plaintiffs' bill was right. The plaintiffs base their case upon the claim that they were defrauded when they accepted $8,000 in payment of their interest in the partnership; that this price was grossly inadequate for their interest; and that they were induced to enter into the contract by reason of their lack of acquaintance with the assets of the firm and the refusal of the trust company to furnish them with a copy of the firm's account with the company. The facts stated in the bill do not support this claim. It is there stated that on March 1, 1931, Singer sought an interview and demanded to be furnished with a copy of the account of the partnership with the trust company and that this demand was refused by the company. It appears however in the bill that afterwards, on April 10, 1931, Singer and Niestadt signed the agreement herein involved containing the statement that all of the assets of the partnership then in the hands of the trust company had been specifically set forth in the assignment then executed by them.

The allegations of fraud contained in the bill depend largely, if not wholly, upon the estimate of the value of real estate belonging to the partnership as of the time when the partnership was dissolved and the assets were conveyed to Friedman. The properties thus conveyed were subject to liens which if foreclosed would probably have left little or nothing for the owners. It is within general knowledge that when the partnership was engaged in the real estate business great declines occurred in the value of real estate in the District. This is illustrated by the history of parcel (4) of the real estate above described, which was estimated at the value of $100,000. It was subject to a trust for $75,000. The property was sold under this lien leaving a deficiency judgment against the owner in the sum of $18,172.42. One of the complaints made by the plaintiffs is that this deficiency judgment was compromised by the payment of $7,500.

It would not be conducive to a just decision for the court to accept present day values of property in passing upon the values of the same property in the year 1931. Values which might now seem to be grossly inadequate might then have seemed to be actually reasonable.

█ The long delay occurring after the dissolution of the partnership before the present litigation was begun concerning it is a sufficient bar to the plaintiffs' suit. No circumstances are stated which would reasonably excuse such delay. Under the statute (D.C.Code, § 1265, as amended [D.C. Code 1929, T. 24, § 341]) an action at law for an accounting is barred in three years from the time the cause of action accrued. There is nothing shown in the bill to justify a court of equity in extending this time. In this connection it may be noted that for the period of twenty months following the date of the contract, the plaintiffs continued to receive the sum of $100 per month as part of the consideration to be paid by the defendant.

█ Moreover, in this case the plaintiffs are seeking the rescission of a contract without first restoring to the defendants the sum of money which they received as consideration for the execution of the contract. It is an established principle of equity, applicable to this case, that the plaintiffs, in order to be heard in such a case, must first restore or offer to restore to the opposite parties the consideration received by them for the contract in question, and such offer must be made before or at the time of the bringing of their suit. In this case no such offer has been made and the plaintiffs are in the position of parties who seek to rescind a contract executed by them, and at the same time retain the consideration which they received for its execution.

In Lyons v. Allen, 11 App.D.C. 543, 552, opinion by Mr. Chief Justice Alvey, it was said by this court: "The plaintiff can not be allowed both to affirm and disaffirm, according as the case may terminate; he can not affirm for what he has received, and disaffirm and repudiate the release as to the difference between that amount and what he might expect to recover by the verdict of the jury. He must disaffirm and rescind the release in toto, if the facts justify him in so doing, and return or offer to return what he has received under it, before bringing his action."

Upon the entire record we affirm the decree of the lower court with costs.

Affirmed.

GRONER, Associate Justice.

I prefer to place my concurrence solely on the ground of the plaintiffs' laches.