**Willard J. LUFF and John W. Slacks, Plaintiffs,**

v.

**Morris F. LUFF and Ruth K. Luff, Defendants.**

**Civ. A. No. 557–55.**

United States District Court
D. Columbia.

Jan. 30, 1958.

**312**

R. Sidney Johnson, J. Richard Earle, Washington, D. C., for plaintiffs.

Thomas M. Raysor, Washington, D. C., George E. Q. Johnson, Chicago, Ill., for intervenors.

Richard L. Merrick, John W. Jackson, Washington, D. C., for defendant.

DANIEL H. THOMAS, District Judge.

This is a complex action to determine the proper distribution among the partners, intervenors, and others, of a $375,577.37 award made in 1954 by the United States government for the benefit of the partnership known as Willmore Engineering Company. The partnership had been formed solely for the purpose of producing winches for transport vessels during World War II.

Two brothers, Morris F. and Willard J. Luff, formed the partnership in 1943. In 1944, John Slacks became a partner.[1] In August 1945, the winch production project having been completed, the partnership was no longer active and it began winding up its affairs. Its only asset was a claim against the United States on account of work done for the Maritime Commission. Attempts to obtain payment through administrative channels failed and an action in the Court of Claims was unsuccessful. Subsequent to the unsuccessful action in the Court of Claims, a civil fraud suit was filed by the government against the two Luffs and Slacks. The fraud suit was successfully defended and a verdict for the defendants was directed by the court at the close of the government's case. It was after this action had been concluded that efforts were commenced to obtain relief through legislative channels.

In 1954, two acts for the relief of Willmore Engineering Company were passed by the Congress,[2] and under the terms thereof arbitrators were appointed to determine and certify to the Secretary of the Treasury the amount required to satisfy the obligation of the government to the partnership. The amount was determined to be $375,577.37, and it has been paid by the government. This sum is being held in the registry of this court (on petition of plaintiffs Willard and Slacks) pending the entry of judgment directing its disposition.

Morris claimed for himself and wife the right to collect the entire amount of the arbitration award. He asserted that Slacks ceased to be a partner about May 15, 1948; that Willard abandoned the partnership about October 1, 1949; that he, Morris, and his wife, Ruth, thereafter carried on all activity with respect to the partnership's claim against the government, and finally obtained the passage of the legislation for the relief of Willmore Engineering Company; and that he, Morris, and his wife were the sole remaining partners entitled to collect the money awarded by the arbitrators. These contentions on the part of Morris

---

1. This and the two succeeding paragraphs are a modified version of the per curiam statement of the U. S. Court of Appeals, D. C. Circuit, in Luff v. Luff, 98 U.S.App.D.C. 211, 233 F.2d 702, affirming the holding of the District Court (Aug. 29, 1955) on motion for partial summary judgment, which holding in effect upheld the plaintiffs' contention and declared that the award was for the benefit of the partnership as composed of Willard, Slacks, and Morris.

2. Private Laws 495 and 501, 83rd Cong. 2nd Session.

led to the filing, by Willard and Slacks, of this suit for a declaratory judgment and general relief.

Among other claims to relief asserted, the court was asked by plaintiffs to declare that the Willmore Engineering Company, as referred to in the private laws and in the arbitration award, is a partnership composed of Willard, Slacks and Morris. On motion [3] for partial summary judgment to that effect, the court, acting through Judge Matthews, granted the motion and entered judgment accordingly. From this order, Morris and Ruth appealed; and the judgment was upheld by the Court of Appeals for the District of Columbia on May 17, 1956.[4] Certiorari was denied by the Supreme Court.[5]

During the progress of the winch production, there had been entire harmony among Morris, Willard and Slacks. Some time subsequent thereto, a disagreement developed with Willard and Slacks on one side and Morris and Ruth on the other. This disagreement has grown into a violent breach which has worsened with time.

On June 19, 1954, while the relief bills were pending before Congress, an arbitration agreement was entered into between Willard, Morris and Slacks, under which Eugene D. Hegarty was appointed arbitrator between themselves " * * * for the purpose of finally resolving, settling, and liquidating all our rights, interests, and obligations in the partnership known as Willmore Engineering Company * * * and as the arbitrator for Willmore Engineering Company on the Board of Arbitrators to be created under the pending bill in Congress, H.R. 7258, in the event it is enacted and becomes law."

On August 4, 1954, the arbitration agreement of June 19, 1954, was repudiated and rescinded by Willard and Slacks, in so far as the agreement permitted Hegarty to resolve the dispute between the partners, but not in so far as the agreement provided for the appointment of Hegarty to the Board of Arbitrators, as set up by the relief bill. Hegarty served in the capacity of one of the arbitrators under the relief bill.

The answer filed by the defendants in the instant case, among other things, put in issue:

(1) The legality of the partial revocation by Willard and Slacks of the arbitration agreement of June 19, 1954.

(2) The legality of the formation of the Board of Arbitrators under the relief bill.

(3) The validity of the award of the Board of Arbitrators.

(4) The question of whether or not Ruth Luff was a partner to the agreement appointing Hegarty.

(5) The question of whether or not the plaintiffs can be compelled to submit to the arbitration by Hegarty of the dispute between the partners.

Hegarty, taking the position that the revocation by Willard and Slacks was void and that the arbitration agreement was irrevocable, proceeded to act as arbitrator between the parties, and on the 10th day of December 1956 filed his report. (This was after the ruling by the appellate court affirming the decision of Judge Matthews, but before the ruling of Judge Pine, referred to below.) Answer of the defendants attempts to sustain the Hegarty report.

The foregoing issues, in one aspect or another, came up on motion before Judge Pine on February 1, 1957, and were determined by him in his oral ruling of that date as follows:

"The judgment of Judge Matthews affirmed by the Court of Appeals [6] and which I have referred to, by reason of its breadth technically disposes of the contentions of defendants that the board of arbitrators was illegally constituted;

---

3. Under Rule 56(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

4. Luff v. Luff, 98 U.S.App.D.C. 211, 233 F.2d 702.

5. 352 U.S. 882, 77 S.Ct. 99, 1 L.Ed.2d 79.

6. Luff v. Luff, 98 U.S.App.D.C. 211, 233 F. 2d 702.

that the award was invalid; that Ruth Luff was a party to the agreement appointing Hegarty; that Willard Luff and John Slacks abandoned the company and are no longer partners; that Morris Luff and Ruth Luff are the partners; that the authority of Hegarty to act as arbitrator of the relationship of the parties was not revoked; that the authority of Hegarty was revoked in toto by Willard Luff and John Slacks; and that the plaintiffs can be compelled to submit to arbitration by Hegarty."

An attempt was made to get me to reverse the ruling of Judge Pine of February 1, 1957, but, after reviewing the file, I declined to reopen the matter. The affirmative effect of Judge Pine's ruling is incorporated into the mixed findings of fact and law below, numbered 14 through 21.

Several former employees of Willmore intervened, asserting claims for work and labor done during the winch production project. At the trial on the merits, the phase of the litigation raised by the intervenor-claimants was heard first. These claims are discussed below in the special findings on intervenors' claims.

R. Sidney Johnson, the attorney for Willmore prior to and during the proceedings before the Court of Claims, and the attorney for the three partners in defense of the civil fraud case, continued as attorney for Willard and Slacks in this proceeding. The defendants, Morris and Ruth Luff, are represented by other counsel. Pleadings put into issue the quantum of R. Sidney Johnson's fee for legal services rendered by him to the partnership.

The rulings of Judge Matthews and Judge Pine have eliminated a great many of the issues presented by the pleadings and leave for me to decide, on the trial on the merits, only three issues, namely:

(a) The legality of the claims of intervenors;

(b) The quantum of the fee of R. Sidney Johnson;

(c) The distribution among the partners of the net proceeds from the award.

The hearing on the merits in this case was commenced before me without a jury on May 23, 1957. The taking of testimony lasted approximately two and one half weeks. Subsequently, on August 9, 1957, Eugene D. Hegarty, who was not permitted to intervene in the instant suit, filed Civil Action No. 1993–57 in the United States District Court for the District of Columbia against Morris F. Luff, Willard J. Luff and John Slacks, claiming of them $19,000 for acting as arbitrator between the partners, pursuant to arbitration agreement dated June 19, 1954. In that suit, Hegarty requested that it be advanced for trial and that this action (Luff v. Luff) be stayed pending the determination of an award in the Hegarty case. In the instant case (Luff v. Luff), a similar motion was filed by defendants requesting that Luff v. Luff be stayed pending the outcome of Hegarty's case. The latter motion to stay a final determination of Luff v. Luff was denied by me.

The issues in the instant case (Luff v. Luff) can be resolved only by an over-all consideration of the facts collected from a mass of conflicting, disgruntled testimony. It is difficult, if not impossible, to tell in detail with any degree of certainty wherein the truth lies. From an over-all study of the case, the following facts are apparent:

### Findings of Fact

1. The partners of Willmore Engineering Company for whom the relief bills were passed were Morris F. Luff, Willard J. Luff, and John Slacks.[7]

2. There was never any agreement among the partners as to the respective partnership interests.

3. The partners do agree that their partnership interests are not equal.

4. The accomplishment of the winch production project required the combined efforts of Willard J. Luff, Morris F. Luff and John Slacks.

---

7. Luff v. Luff, 98 U.S.App.D.C. 211, 233 F.2d 702.

5. If the project had not been successfully accomplished, the partnership would not have been entitled to any money.

(See Senate Report 1458, 2nd Session, 83rd Congress.)

6. If the civil fraud suit had not been successfully defended, any efforts at the passage of the relief bills would have been futile.

7. After successful defense of the civil fraud case, as between the partners the passage of the relief bills was accomplished as a result of practically the sole efforts of Morris F. Luff.

8. In the accomplishment of the winch production project, the partners devoted the following number of working days: Willard J. Luff, 906; Morris F. Luff, 678; John Slacks, 291.

9. Withdrawals by the partners during the progress of the winch production project were as follows: Willard Luff, $26,324.41; Morris Luff, $16,888.-20; Slacks, $6,255.00.

10. In addition to time spent in the accomplishment of the winch production project, Morris Luff advanced to the partnership $180 for which he has never been reimbursed. Willard Luff advanced to the partnership the sum of $1,452.42 for which he has never been reimbursed. All other advances by any of the three partners have been reimbursed.

11. One half of the cost of arbitration, pursuant to the two relief bills, amounts to $14,750. (The other half was borne by the government.) This amount has been disbursed to the three arbitrators, leaving a balance now on deposit in the registry of the court of $360,827.37.

12. On October 22, 1951, Merchants National Bank of Hampton, Virginia, obtained a judgment against Willard J. Luff and Morris F. Luff in the Circuit Court of Montgomery County, Maryland, in the sum of $3,119, with interest from October 22, 1951, and costs, and an attorney's fee in the amount of $311.90. This judgment was obtained because of default in the payment of a note given to secure rent due and unpaid for an office occupied by Willmore in said bank building. This judgment has never been paid, and is admitted to be a just debt by all partners.

13. The reasonable value of the legal services of R. Sidney Johnson to the partnership is $25,000, which amount is due and unpaid.

The following additional findings of mixed fact and law flow from the decision of Judge Matthews (August 29, 1955) and of Judge Pine (February 1, 1957):

14. The Board of Arbitrators, named pursuant to the relief bills, was legally constituted.

15. The award of the Board of Arbitrators was valid.

16. Ruth Luff was not a partner to the agreement appointing Hegarty.

17. Willard Luff and John Slacks did not abandon the partnership.

18. Morris F. Luff and Ruth Luff did not constitute the partnership of Willmore Engineering Company for whom the relief bills were passed.

19. The authority of Hegarty to act as arbitrator as between the partners was revoked.

20. The authority of Hegarty to act as one of the three arbitrators pursuant to the relief bill was not revoked.

21. The finding of Hegarty as arbitrator between the partners is not valid and therefore the plaintiffs are not compelled to abide by such finding.

### Special Findings and Conclusions on Intervenors' Claims

A.—Harold M. Pulsifer died on April 8, 1949. His son, Harold M. Pulsifer Jr., of Cook County, Illinois, is the duly appointed, qualified and acting administrator of his estate authorized to present this claim. Harold M. Pulsifer was a qualified production engineer. In August 1944, Pulsifer was retained by Willmore to perform engineering services, on the basis that he would be paid reasonable and adequate compensation for his services but would not be compensated in full until Willmore collected payment for

the winch production project from the United States government, out of which payment Pulsifer would be paid. Pulsifer devoted his full time and attention to the performance of his duties, commencing in August 1944, and continuing until on or about July 2, 1945, a total of 252 days of service. On or about the latter date, Willmore determined, agreed, and settled, as an account stated with Pulsifer, that the sum of $12,600 had been earned by Pulsifer in the performance of his services, and that said amount would be paid out of the proceeds of the claim of Willmore against the United States when collected and received by Willmore.

B.—Douglass L. Arnold died on March 14, 1946, and Roselle Arnold of Cook County, Illinois, is the duly appointed, qualified and acting administratrix of his estate authorized to present this claim. Arnold was a qualified consultant engineer. On or about October 15, 1943, Arnold entered into an agreement with Willmore to perform services on the basis that he would be paid at the rate of $30 per day, of which $20 was to be paid concurrently as services were rendered on the project, and the $10 per day balance was to be paid to him when Willmore collected payment from the United States government out of which payment Arnold would be paid. Arnold commenced work for Willmore around October 25, 1943, and devoted his full time and attention to the project thereafter for Willmore until June 1945. Pursuant to the agreement, Arnold was paid $7,460 for 373 days at $20 per day, but is due and owed the following: 1943, 56 days @ $10, or $560; 1944, 317 days @ $10, or $3,170; 1945, 51 days @ $30, or $1,530; or a total of 5,260. On or about the termination of his employment in 1945, Willmore determined, agreed and settled as an account stated with Arnold that the sum of $5,260 had been earned by Arnold in the performance of his services, and that said amount would be paid out of the proceeds of the claim of Willmore against the United States when collected and received by Willmore.

C.—Andrew E. Flood died on October 12, 1953. Lillian Steurnagel is the duly appointed, qualified and acting administratrix of his estate and authorized to present this claim. In January 1945, Flood entered into an agreement with Willmore to perform personal services for the partnership. It was agreed that Flood would be paid reasonable and adequate compensation for his services but would not be compensated in full for his services until Willmore collected payment for the winch production project from the United States government, out of which payment Flood would be paid. Flood devoted his full time and attention to the performance of his duties commencing in January 1945, and continuing until August 1945, a total of 153 days. On or about the latter date, Willmore determined, agreed and settled, as an account stated with Willmore, that Flood should receive $40 per day; that $6,120 had been earned by Flood in the performance of his services; and that said amount would be paid out of the proceeds of the claim of Willmore against the United States when collected and received by Willmore.

D.—In or about March 1944, Walter F. Rudy entered into an agreement with Willmore Engineering Company to perform personal services for Willmore on the basis that he would be paid reasonable and adequate compensation for his services, including advance time and overtime. It was further agreed that he would not be compensated in full for his services until Willmore collected payment for the winch production project from the United States, out of which payment Rudy would be paid. Rudy devoted his full time and attention to his work for Willmore, commencing in April 1944, and continuing until August 1945, a total of 68 weeks, for which Rudy was paid an agreed minimum of $100 per week on account. On the termination of his work, Willmore determined, agreed and settled, as an account stated with Rudy, that the additional sum of $2,600 had been earned by Rudy in the performance of his serv-

ices, and that said amount would be paid out of the proceeds of the claim of Willmore against the United States when collected and received by Willmore.

E.—Norma A. Mackos was formerly known as Norma N. Asher, prior to her marriage. She acted as chief clerk for Willmore in charge of its Holyoke, Massachusetts, office, until said office was closed in April 1945; and thereafter she was in charge of the Washington, D. C., office. Willmore agreed to pay her reasonable and adequate compensation for her services, but agreed that they could not compensate her fully for her services until Willmore collected payment for the winch production project from the United States government, out of which payment Mackos would be paid; that she would be paid for overtime and for adjustment of her low salary, which was less than the 'going wage' at that time. She devoted her full time to the project, commencing on or about March 1944, and continuing until August 11, 1945. Willmore paid her $35 per week at first, which was later increased to $50 per week for 65 successive weeks ending in August 1945, and about two additional weeks on vacation. On the termination of her work, Willmore determined, agreed and settled, as an account stated with Mackos, that the sum of $1,300 had been earned by Mackos in the performance of her services, and that said amount would be paid out of the proceeds of the claim of Willmore against the United States when collected and received by Willmore.

F.—Leo F. McGinley claimed on behalf of himself individually and on behalf of the partnership of McGinley and McGinley. The McGinley partnership, from 1949 through 1953, consisted of John B. McGinley, father of Leo F. McGinley, and Leo F. McGinley. Said firm performed services of a certified public accountancy nature for Willmore. From 1949 to 1953, inclusive, Willmore employed the McGinley firm. Willmore agreed to pay them for their services out of the proceeds of the claim of Willmore against the United States when collected and received by Willmore. The amount claimed is $3,360, and this amount is not in dispute, being stipulated as correct by all parties. Said amount is a partnership debt, as well as individual indebtedness of plaintiffs and defendant Morris Luff.

When, in 1954, the two private laws for the relief of Willmore were passed by the Congress of the United States, and arbitrators were appointed to determine and certify to the Secretary of the Treasury the amount required to satisfy the obligations of the United States to Willmore, the claim of Willmore before the arbitrators included the obligation of the partners to Pulsifer, Arnold, Flood, Rudy, and Mackos. The indebtedness due these intervenors, including that to the McGinleys, has not been paid.

Since the personal services of these intervenors contributed to the creation and production of the fund obtained under the relief bills, these intervenors are entitled to an equitable lien and to be paid from such fund.

In addition, intervenors are firm creditors, and as such have the right to have the assets of the partnership applied to the payment of their claims before the assets can be applied to the separate use of the partners or claims among the partners themselves.

Further, it appears that Congress intended that the monies paid under the arbitration award be in full and final payment of Willmore's claim, which included amounts for services and expenses of these intervenors. It would be inequitable and contrary to the intent of Congress for Willmore to receive an award computed in part on amounts due employees and then fail to pay such debts out of the fund collected for this purpose.

Intervenors are entitled to judgments against the plaintiffs and defendant Morris F. Luff individually and as co-partners trading as Willmore Engineering Company and to judgments against the fund on deposit in the amounts claimed. Payments out of the fund to intervenors and their counsel shall satisfy said judgments against plaintiffs and defendant.

Conclusions of Law on the Partnership Interest Feature and Terms of Judgment

■■ Actions for declaratory judgments are statutory proceedings in which the issues tendered may be legal or equitable.[8] "The settlement of a partnership, and the adjustment of the accounts and interests of the copartners, are matters peculiarly of equitable cognizance * * * "[9]

■ "The basic concept of a general partnership is that all parties make a contribution thereto and as a result share in the assets, the profits and losses, according to their contribution. In the absence of a contrary provision in the agreement where one partner contributes money or physical assets and other(s) contribute personal services, skill and knowledge, they share in the capital assets according to the value placed on each contribution."[10]

From the mass of conflicting testimony, I am of the firm conviction that the only method of arriving at a solution to this case must be achieved through the general equity powers of the court in an attempt to do complete justice. On this theory a judgment will be entered containing the following provisions:

I. Intervenors' claims allowed:

| | | |
|---|---|---|
| McGinley & McGinley | | $ 3,360 |
| Estate of Pulsifer | | $12,600 |
| Estate of Arnold | | $ 5,260 |
| Estate of Flood | | $ 6,120 |
| Rudy | | $ 2,600 |
| Mackos | | $ 1,300 |

Judgment Creditor's claim allowed:

Merchants National Bank of Hampton, Va.

| | | |
|---|---|---|
| Judgment | $3,119.00 | |
| Interest at the rate of 6% per annum from Oct. 22, 1951, to date: | $1,168.94 | |
| Costs in the Circuit Court, Montgomery Co., Md.: | $ 16.55 | |
| Attorney's fee: | $ 311.90 | $ 4,616.39 |

II. To Willard J. Luff for advances not refunded: $ 1,452.42

III. To Morris F. Luff for advances not refunded: $ 180.00

IV. Claim of R. Sidney Johnson against the partnership and individual partners for attorney's fees: $25,000.00

———◆———

V. The sum of $20,000 will be retained in the registry of the Court pending the outcome of Civil Action No. 1993–57, entitled Eugene D. Hegarty v. Morris F. Luff et al., now pending in the United States District Court for the District of Columbia, said sum to be impounded for the purpose of satisfying any judgment entered against the defendants, should a judgment for the plaintiff be entered therein. Any portion of said $20,000 remaining unconsumed after satisfaction of any judgments against the defendants in said Hegarty case, shall be distributed among the partners in the percentages hereinafter set out.

8. 28 U.S.C.A. Secs. 2201, 2202. Buromin Co. v. National Aluminate Corporation, D.C., 70 F.Supp. 214.

9. Newell v. Bradford, 187 Ala. 251, 65 So. 800, 801; 21 C.J. 132; 68 C.J.S., Partnership § 410, pp. 932, 933, 934.

10. Farris v. Commissioner of Internal Revenue, 10 Cir., 222 F.2d 320, 322.

 VI. The passage of the relief bills which ultimately produced the money was achieved through practically the sole efforts of Morris J. Luff. These efforts required considerable time and ingeniousness on his part, for which he should be compensated over and above his partnership interest. Reasonable compensation for these services is $100,000.

 VII. The only practical way to determine the partnership interest of each partner in the balance of the fund on deposit is to equate the monetary value of the day's work of each and compute the total contribution of each partner to the partnership in terms of time spent in the consummation of the winch production project. This percentage is as follows:

| | | |
|---|---|---|
| Willard J. Luff | 906 days | 48.3% |
| Morris F. Luff | 678 days | 36.2% |
| John Slacks | 291 days | 15.5% |

The money heretofore withdrawn by each of the partners must be taken into consideration. The amounts heretofore withdrawn are as follows:

| | |
|---|---|
| Willard J. Luff | $26,324.41 |
| Morris F. Luff | 16,888.20 |
| John Slacks | 6,255.00 |

Deduction of items numbered I, II, III, IV, V, and VI, totaling $182,488.81, from the balance now on deposit of $360,827.-37, leaves a net amount (to be divided among the partners) of $178,338.56, from which costs as hereinafter taxed must first be paid.

Costs in this case will be equally divided among Willard J. Luff, Morris F. Luff, and John Slacks (each paying one-third thereof) except travel and subsistence expenses and per diem of John W. Slacks for June 20, 21, 22, 23, and 24, 1957, in the amount of $713.57, as claimed by affidavit of John W. Slacks filed in this cause on July 15, 1957, all of which is to be taxed against the defendant Morris F. Luff.

The balance of the funds on deposit in the registry not hereinbefore allocated is to be divided among the partners in the following percentages:

| | |
|---|---|
| Willard J. Luff | 48.3% |
| Morris F. Luff | 36.2% |
| John W. Slacks | 15.5% |

after first taking into consideration the money heretofore withdrawn by each of the partners during the progress of the winch production project.