Walter E. WARREN, Appellant,

v.

Dudley H. CHAPMAN, Appellee.

No. 86–815.

District of Columbia Court of Appeals.

Argued June 9, 1987.
Decided Dec. 9, 1987.[*]

* This opinion was released in typed form prior to   printing.

John C. Hayes, Jr., with whom Walter E. Warren, Washington, D.C., was on the brief, for appellant.

Thomas G. Corcoran, Jr., with whom Dudley H. Chapman, Washington, D.C., was on the brief, for appellee.

Before MACK and ROGERS, Associate Judges, and NEBEKER, Associate Judge, Retired.**

ROGERS, Associate Judge:

Two principal issues are raised in this appeal: first, whether a cause of action for an accounting brought almost four years after the dissolution of a partnership was barred by laches, and second, whether prejudgment interest is properly awarded on a partnership debt. We hold that because the partnership continued to wind up its affairs for at least two years, the cause of action for an accounting was not barred by laches. We also hold that the trial court, acting as a court of equity, properly awarded interest from the date on which appellee's settlement offer expired until judgment. Finding no merit, in view of the stipulation to the certified public accountant's report and testimony, to appellant's claim that there was insufficient evidence to find that the partnership's records were

** Judge Nebeker was an Associate Judge of this court at the time of argument. His status changed to Associate Judge, Retired on September 1, 1987.

1. Keith I. Clearwaters has assigned his rights to Chapman and is not a part of this action.

2. Before the trial began, the judge instructed the parties to enter into negotiations for a possible settlement. After these negotiations, the parties stipulated that Godbout was a certified public

adequate for an accounting to be performed, we affirm.

## I

According to the unchallenged findings of the trial judge, the three-person law firm of Chapman, Clearwaters,[1] and Warren commenced operations as a partnership in the District of Columbia on May 1, 1977. Pursuant to their oral agreement, Chapman was to act as managing partner, twenty percent of any income was to go to the partner producing the business, and all other expenses and profits were to be shared equally. The firm continued to operate as a partnership through December 31, 1978, at which time Warren resigned and the firm dissolved. Shortly thereafter, Joseph E. Godbout, who became the firm's accountant at Warren's instigation shortly after Warren joined the firm, was directed to prepare a final accounting from the partnership's financial records, but he did not submit his report until September, 1980. The parties exchanged some correspondence concerning the report and, on February 25, 1981, Chapman submitted the accounting to Warren for his review and comment. On October 15, 1981, Warren returned a letter proposing certain adjustments, which were based on a letter he received from Godbout on October 2, 1981. Chapman responded on November 12, 1981, with a proposal of additional adjustments, setting the final principal amount at $13,293.77, but expressing a willingness to accept the discounted amount of $10,000. Chapman requested a reply by December 31, 1981, but Warren made no further response. Chapman filed an action for an accounting on December 15, 1982.

At trial,[2] Warren contended that he owed Chapman nothing and that the court could

accountant whose original accounting showed a starting-point debt owed by Warren to Chapman of $13,293.77, and that he would testify that Warren was not entitled to a credit equaling one-third of the firm's assets, but that he was owed adjustments of $1,000 for general expenses, of $1,580 for interest paid in the servicing of a firm debt, and of $1,466 for payments made by the firm to an outside attorney. In Godbout's opinion, then, Warren owed Chapman $9,247.77. The parties further stipulated that Godbout would testify that Warren would

order no payment because Chapman, who was the managing partner in charge of records, had failed to maintain adequate records. He further contended that because of delay and the consequent deficient state of the records, Chapman's claim was barred by laches. The trial judge ruled against Warren on each of these contentions and adopted Godbout's recommended adjusted figure of $9,247.77 as a fair and accurate statement of the principal amount, and also ordered Chapman to pay six percent interest dating from December 31, 1981. This appeal followed.

## II

Warren contends that the claim for an accounting was barred by laches. He correctly argues that a partnership is dissolved upon the "change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." D.C.CODE § 41–128 (1981). Because there was no demonstrated agreement to the contrary, the Chapman, Clearwaters and Warren partnership was "dissolved" on December 31, 1978. Thus Warren argues that because he disavowed any debt from the outset,[3] the three-year limitations period commenced to run on the day he left the firm, December 31, 1978. Chapman did not file for an accounting until December 15, 1982, almost four years later. Warren further maintains that he had no influence on the delay and that it was the managing partner's responsibility to have a timely accounting performed. He cited the

deficient state of the firm's records as an additional factor in favor of barring the claim.

### A.

Warren's contention that Chapman's cause of action for an accounting accrued "upon the dissolution of the partnership," is based on the District of Columbia Uniform Partnership Act, D.C.CODE § 41–101 et seq. (the Act), which provides that the *"right to an account* of his interest shall accrue to any partner, or his legal representative, *as against the winding up partners* or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary." *Id.* § 41–142 (emphasis supplied). Because Chapman failed to demonstrate any basis for tolling the applicable statute of limitations at law, D.C.CODE § 12–301(8), Warren maintains that the cause of action is barred by laches. *See Singer v. Friedman,* 66 App.D.C. 191, 193, 85 F.2d 690, 692 (suit for property fraudulently withheld not brought for more than three years after execution of dissolution agreement), *cert. denied,* 299 U.S. 590, 57 S.Ct. 116, 81 L.Ed. 435 (1936).[4] Chapman responds that the cause of action did not arise until the partnership business was concluded, which included the payment of all partnership debts, *see Wright v. Armwood, supra* note 4, 107 A.2d at 704, and that Warren failed to indicate unequivocally that he was unwilling to account until he did not respond to Chapman's letter of November 12, 1981;

---

be entitled to an additional credit of $3,416 (or $2,400 if a yearly average instead of actual May expenditures were used) of the court found that Warren had joined the firm on June 1 instead of May 1, 1977. Warren argued at trial that he was entitled to a credit because he did not join the firm until June 1, 1977; this issue has not been raised on appeal.

**3.** In contrast, however, Chapman testified that Warren first disavowed any debt sometime in July or August of 1980, shortly after Warren had paid off one of the firm's debts.

**4.** Section 12–301(8) prescribes a three-year limitations period for actions "for which a limitation is not otherwise specially prescribed." Chapman's post-accounting action could also

fall under § 12–301(7), which prescribes an identical three-year limitations period for actions on a simple contract. Arguably, however, neither of these limitations periods directly applies because an accounting is an action in equity. *Wright v. Armwood,* 107 A.2d 702, 703 (D.C.1954); *Luff v. Luff,* 158 F.Supp. 311, 318 (D.D.C.1958), *aff'd in part, rev'd in part,* 105 U.S.App.D.C. 366, 267 F.2d 643 (1959). In *Singer v. Friedman, supra,* the court applied a three-year limitations period to an action in equity by reference to a statute of limitations for an accounting action at law. 66 App.D.C. at 193, 854 F.2d at 692. For purposes of the instant case, the court can assume that a three-year limitations period applies and need not determine whether the statute of limitations applies directly or is to be used simply as a guideline.

and further, that in any event, Warren has failed to show the circumstances necessary for laches to bar the suit.

Prior to the enactment of the D.C. Uniform Partnership Act, this court discussed when a partner's cause of action for an accounting accrues.

> It has been said that the statute [of limitations] generally begins to run against the right of a partner to require an accounting, upon dissolution of the partnership. But it seems to be the rule that where one partner continues on in winding up the affairs of the partnership, collecting its assets or discharging its debts, the statute does not begin to run immediately upon dissolution but is deferred until after the business of the firm is concluded.

*Wright v. Armwood, supra* note 4, 107 A.2d at 704 (citing *Riddle v. Whitehill*, 135 U.S. 621, 10 S.Ct. 924, 34 L.Ed. 282 (1890) (circumstances of individual case)); *see also* 60 AM.JUR.2D *Partnership* § 275 (1972) (cause of action for accounting accrues after sufficient time for performance). The Act similarly provides that after dissolution "the partnership is not terminated, but continues until the winding up of the partnership affairs is completed." D.C.CODE § 41–129. Warren does not contest that Chapman, as managing partner, properly assumed principal responsibility for winding up the partnership. Nor does he contend that he had no responsibilities in that regard; indeed he continued to recognize his partnership obligations, even after he first claimed that as of December 31, 1978, their mutual debts and liabilities were "a wash," by paying off one of the bank loans in July or August of 1981. *See id.* § 41–135. Nor did he seek or claim he had "cause" to "obtain winding up by the court." *Id.* § 41–136.

Requiring Chapman to institute a protective lawsuit at dissolution, however, would encourage unnecessary, premature, and excessive litigation, *cf. Gull Airborne Instruments v. Weinberger*, 224 U.S.App.D.C. 272, 278, 694 F.2d 838, 844 (1982) (unjust to penalize for exhausting administrative remedies), by bringing the parties before the court prior to a clear indication that they are unable to wind up the partnership's affairs amicably. Any suit for an accounting filed by Chapman from the outset would have been unnecessary: Chapman had the ability to order the preparation of a financial report and had no indication that Warren would refuse to consider any reasonable claims based on a final accounting. Warren is under a subsequent obligation to deal in good faith. His initial disavowal of any debt can neither extinguish this duty nor unilaterally commence the tolling of any limitations period. *See* D.C.CODE §§ 41–120, –135.

■ Although the Act does not explicitly adopt the rule discussed in *Wright v. Armwood*, quoted *supra*, we do not interpret the Act to sanction Warren's approach. Section 41–142, on which he relies, only establishes the right to an immediate account of a partnership interest *as against* the winding up partner. The statutory scheme seems to contemplate that when the winding up partner seeks relief and is in complete control of the books and records, the cause of action does not accrue until after there has been a reasonably sufficient period of time in which to conduct an accounting. This result is consistent with § 41–142, which only applies to rights against the winding up partner, and it reflects the general rule, *see Wright v. Armwood, supra* note 4, 107 A.2d at 704; *Hodge v. Kennedy*, 198 Va. 416, 421–24, 94 S.E.2d 274, 279–80 (1956) (dealings performed after dissolution), that causes of action against a partner do not accrue, at least where an out-of-court accounting is possible, until after the accounting has been performed. *See Stodd v. Goldberger*, 73 Cal.App.3d 827, 837, 141 Cal.Rptr. 67, 73 (1977); *Burris v. Burris*, 140 Kan. 208, 216, 34 P.2d 127, 132 (1934); *Mitchell Resort Enterprises v. C & S Builders*, 570 S.W.2d 463, 465 (Tex.Civ.App.1978); *see also* 60 AM.JUR.2D *Partnership* § 275 (1972); 96 A.L.R. 432, 441 (1935). Moreover, by simply accruing the right to receive an accounting, § 41–142 does not necessarily also define when a cause of action

for an accounting has "accrued"[5] in a particular case.

■ Therefore, a partner has a right to an accounting upon dissolution, and indeed has a right to obtain the assistance of the court if such an accounting is refused, D.C.CODE § 41–121. That partner does not have a concomitant right, however, to demand that the partner with principal responsibility for winding up a partnership, who has willingly undertaken to have an accounting performed, file suit. Nor can the partner claim that the time for filing an action for an accounting begins to run prior to the time it becomes manifest that the demanding partner refuses to acknowledge a partnership obligation as determined by an accounting. The winding up of the partnership includes activities performed after dissolution. *Hodge v. Kennedy, supra,* 198 Va. at 422, 94 S.E.2d at 280. Accordingly, we hold that where a demand for an accounting has been made in connection with the dissolution of a partnership, the limitations period commences to run for an action between the partners for an accounting and settlement only after a sufficient time has elapsed after such demand to enable those on whom it has been made to comply.

■ In the instant case, Chapman's suit was neither premature, untimely, nor barred by laches. It had not become evident until early in 1982 that the parties were no longer able to resolve their differences by means of a further review of the accountant's report and the firm's documents and records on which that report was based. Until Chapman advised Warren on November 12, 1981, that if he did not pay what he owed to the partnership, then Chapman would file suit, Warren had continued to recognize his partnership obligations and to negotiate the amount of his debt. When, however, he failed to respond by December 31 as requested in Chapman's letter, it became clear that Warren had refused to account. Consequently, Chapman's suit was timely filed, D.C.CODE

§ 12–301(8), twelve months later. Chapman's suit was timely, moreover, even if the cause of action accrued in July or August, 1980, when Warren finished paying a bank loan and claimed that he owed nothing more to the partnership.

The trial judge did not expressly rule when Chapman's cause of action accrued. Nonetheless, the judge found that the accounting justifiably consumed twenty-one months, that Warren had participated in the repayment of bank loans, *see Cooper v. Saunders–Hunt,* 365 A.2d 626, 628 (D.C. 1976), and that Warren had made some effort to negotiate the accounting with Chapman. We owe deference to this resolution of the testimony, and the judge's interpretation in this case is clearly supported by the record. *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 546 (D.C.1981); *In re A.B.H.,* 343 A.2d 573, 575 (D.C.1975). Indeed, even when the evidence is viewed most favorably to Warren, his initial disavowals of debt did not rise to the level of a refusal to negotiate in good faith the results of an accounting. Thus, Chapman could have interpreted Warren's statements, see Subpart B *infra,* as simply demonstrating his belief about the amount owed; he could justifiably have assumed that Warren would respond to an accounting showing otherwise.

### B.

■ Aside from the limitations period, the trial judge did not err in finding that the suit for an accounting was not barred by laches. "In order to invoke the doctrine of laches ... a party must demonstrate both undue delay by the plaintiff and prejudice to the defendant resulting from the delay." *Brown v. Dyer,* 489 A.2d 1081, 1084 (D.C.1985); *see also King v. Kitchen Magic,* 391 A.2d 1184, 1187–88 (D.C.1978); *Gull Airborne Instruments, supra,* 224 U.S.App.D.C. at 277, 694 F.2d at 843 ("[I]f the delay is lengthy, a lesser showing of prejudice is required."). In this regard, Warren also contends that due to the delay,

---

**5.** This court, albeit in another context, has described when a cause of action "accrues." *See Bussineau v. President and Directors of George-* *town College,* 518 A.2d 423, 425 (1986); *Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1198–99 (D.C.1984).

there is insufficient evidence from which the trial judge could conclude that the records were adequate both for an accounting and to deny the claim of laches. This court, however, will reverse the factual findings of the trial judge only if they are clearly erroneous or without evidence to support them. D.C.CODE § 17–305(a); *see also Edmund J. Flynn Co., supra,* 431 A.2d at 546.

> The trial judge found that
>
> [t]he four year delay, between the date of dissolution (December 31, 1978) and the date this suit was filed (December 15, 1982), cannot be attributed solely to the conduct of the plaintiff. The accountant consumed twenty-one months to submit the accounting, essential to any informed, final decision. Any additional delay was attributable, at the very least, in part, to the defendant. The defendant has proved no prejudice resulting from any delay attributable to plaintiff.

These factual findings are supported by the evidence and the ruling is correct as a matter of law: Godbout's report and his stipulated testimony alone form a sufficient basis from which the trial judge could conclude that an expert certified public accountant was able to make a final accounting. Chapman may satisfy his burden of proof with this testimony and need not introduce the actual records. *See Cooper v. Saunders–Hunt, supra,* 365 A.2d at 628. Moreover, Chapman testified that throughout the life of the firm, the records for the preparation of tax forms were provided to Godbout, that they were available for the accounting, and that they continued to be available. *See* D.C.CODE § 41–118. Although no bookkeeping was performed during the first few months of the firm's operation, the firm's checkbook, bills, and receipts were given to Godbout. At Godbout's instruction, the secretary thereafter performed all of the necessary bookkeeping tasks. The trial judge permissibly credited this testimony. *In re A.B.H., supra,* 343 A.2d at 575.

Warren points to unpersuasive contrary evidence. First, he challenges the frequent use of lump sum figures and claims that the firm records did not identify the client to whom reimbursable expenses should be allocated, and that certain personal expenses were improperly allocated to the other partners' travel and entertainment expense accounts. As to the client expenses, however, the trial judge permissibly found that Warren had entered a partnership in which expenses were to be shared equally.[6] Moreover, Warren only introduced his own notes and testimony as to the billing of personal expenses,[7] and the trial court could only speculate as to the basis for Warren's argument.

Second, as to the availability of these records, Warren only testified that on one trip to the office he examined a file binder that contained only a few of the records. He admitted, however, that Chapman had not represented that the binder contained all of the records and that he could not remember ever asking Chapman to see all of the records.[8] *See* D.C.CODE § 41–119.

---

6. Warren does not challenge this critical finding on appeal. *Cf.* D.C.CODE § 41–117 (absent an express agreement, partners share equally in profits and share losses in proportion to share of profits). In any event, the trial judge's finding was amply supported by the evidence. Warren stated in an affidavit that expenses were to be shared "on a fair basis in accordance with the generally-honored principle of mutual equality." He admitted he filed his tax return on that basis. Chapman testified that the three partners had agreed to share all expenses equally. He could not recall exactly when this understanding was reached, but it is a reasonable inference that its operation was continuous. Moreover, the firm's tax and accounting records show an equal sharing of expenses throughout the life of the firm.

7. Warren stated that, "I just had this general feeling that I expressed in that [October 15] letter that if we did take a close look at them, we would find that a substantial number of them were in my favor." In response to the trial judge's characterization of the challenge as "pure speculation," Warren stated that "it is speculation only to the extent that I haven't looked at those files but from my experience in the firm and knowing or seeing on a daily basis when checks were written or one thing or another, but without having added them up, there would be considerable expenses."

8. Chapman testified that he instructed his secretary to make all of the firm's records available to Warren. He did not provide client billing files, however, because he interpreted the dis-

Because Warren entered a stipulation as to what Godbout's testimony would have been and did not call him as a witness, he cannot now be heard to complain about his own failure to introduce the requisite evidence.[9] The trial judge was not precluded, by the testimony about a possible misunderstanding in discovery, see note 8, *supra,* from concluding that there was no deficiency in the state of the firm's records. Furthermore, Warren conceded that Godbout's stipulated accounting had addressed his October 15, 1981, claims for credits, that the additional claims he first introduced at trial were not based on his examination of any new records, and, further, that his principal quarrel was with certain allocations and not the basic numbers or data.

Thus, the record supports the finding that Warren was not prejudiced by the delay. Specifically, Warren has not shown that the relevant records have become unavailable with the passage of time. Similarly, while his memory of the relevant events may have deteriorated, Warren was clearly on notice of the pending claim and could have taken steps to protect himself or to memorialize the pertinent data.

The record also amply supports a finding of excusable delay and fails to show any neglect or lack of diligence by Chapman. Chapman is at most chargeable with his hesitancy to file a complaint after Warren had ceased further dealings during 1982, and Warren himself could have expedited matters by more clearly expressing his refusal to consider any claim. *Cf. Evans v. United States Fidelity and Guaranty Co.,* 127 A.2d 842, 848 (D.C.1956) (party sub-

stantially contributing to delay precluded from pleading laches). Although Chapman initially testified that Warren's "wash" claim had been consistently made since 1980, he subsequently clarified his testimony, and, in any event, Warren's disclaimer is not tantamount to a refusal to negotiate or to respond specifically to a claim of liability supported by an accounting. See Part IIA, *supra.*

### III

█ Warren's final challenge is to the award of interest to Chapman. The trial judge ruled that Warren was liable for simple interest on the principal amount at the rate of six percent,[10] dating from December 31, 1981, the date on which Chapman's settlement offer expired, until February 28, 1986, the date of judgment. The general rule is that prejudgment and presettlement interest on post-dissolution partnership debts is not generally allowed as a matter of right, but that the trial judge may make an award of such interest if the equities of the individual case so require.[11] *Speka v. Speka,* 124 Cal.App.2d 181, 186, 268 P.2d 129, 132 (1954); *Bollinger v. Bollinger,* 242 Md. 307, 313–15, 219 A.2d 62, 65–66 (1966); *Greenan v. Ernst,* 408 Pa. 495, 512, 184 A.2d 570, 579 (1962) (reversing award of interest on pre-accounting debt); *see also Evans v. Gunnip,* 36 Del. Ch. 589, 593–99, 135 A.2d 128, 133–34 (1957) (disfavoring *pre-dissolution* interest on partnership but nonetheless affirming discretionary nature of award); *Hodge v. Kennedy, supra,* 198 Va. at 422–24, 94 S.E.2d at 280–81. If the trial judge weighs the equi-

covery request as including only financial compilations, and not original materials.

9. Warren admitted that the stipulated testimony did not contain a reference to these contested items. Furthermore, while claiming that Chapman's request to him of varying figures shows that the records were inadequate, the evidence showed that Chapman revised his request upon discovering one apparent error, and that he returned to his original request upon discovering that there had been no error. Thus, there has been no nexus demonstrated between the varying figures and the state of the firm's records.

10. D.C.Code § 28–3301 (1987 Supp.) provides that the "rate of interest in the District upon the loan or forbearance of money, goods, or things in action in the absence of express contract, is 6 percent per annum." The trial judge's reference to the 1981 edition of the District of Columbia Code is harmless error. D.C.Code § 17–305.

11. By analogy, in an action to recover damages for breach of contract, D.C.Code § 15–109, the trial court is permitted to include interest as an element of the damage award if necessary to fully compensate the plaintiff. *See District of Columbia v. Pierce Associates,* 527 A.2d 306, 310 (D.C.1987); *see also Edmund J. Flynn Co. v. LaVay, supra,* 431 A.2d at 550 n. 6.

ties, that award will not be upset on appeal absent an abuse of discretion. *See Pete v. United Mine Workers of America Welfare and Retirement Fund of 1950*, 171 U.S. App.D.C. 1, 14, 517 F.2d 1275, 1288 (1975) (en banc).

 Citing *Kiser v. Huge*, 170 U.S.App. D.C. 407, 421, 517 F.2d 1237, 1251 (1974), *adopted by the en banc court*, 171 U.S. App.D.C. 1, 517 F.2d 1275 (1975), Warren contends that prejudgment interest cannot be ordered unless the amount of the debt has been liquidated. *Kiser*, however, involved a nonpartnership, statutory claim, and the court reversed the trial court's denial of prejudgment interest. The court wrote that because funds had been wrongfully withheld, it would be "difficult to affirm the [Superior] Court's denial of interest [even] as an exercise of equitable discretion." 170 U.S.App.D.C. at 422, 517 F.2d at 1252. By contrast, an action for a post-dissolution accounting is equitable in nature, *Wright v. Armwood, supra* note 4, 107 A.2d at 703; *Luff v. Luff, supra* note 4, 158 F.Supp. at 318 (citations omitted), and interest may be awarded if the equities so demand. Specifically, ex-partners may be entitled to interest if other partners have refused to arrive at a proper or fair settlement. *Bollinger, supra*, 219 A.2d at 65–67.

 Accordingly, we hold that the trial judge permissibly awarded interest on the partnership debt, to commence from December 31, 1981. Before this date Chapman had submitted a good faith, reasonable offer of settlement to which Warren made a wholly inadequate response. Warren offered nothing but vague conjecture to support his claim that he owed nothing. Even if Chapman's figures proved to be inaccurate, he had indicated a willingness to deal further and had even proposed a settlement figure, an offer that Warren ignored. Chapman adequately demonstrated that Warren owed him a substantial debt and he is entitled to be compensated for what has proved to be wrongful delay. Warren is not harmed because he has en-joyed a low-cost loan throughout this period.

## IV

Chapman suggests that he should be awarded costs and attorney's fees because Warren has brought a frivolous appeal. Warren has, however, raised good faith objections to the adequacy of the firm's records. That he was unable to prove his case was a product of his failure to introduce sufficient evidence, which is far different from raising a frivolous issue. Further, the award of prejudgment interest represents a difficult exercise of discretion that is not patently correct on its face.

The judgment is accordingly affirmed, and the request for costs and attorney's fees on appeal is denied.