DISTRICT OF COLUMBIA, Appellant,

v.

Helen P. SMITH, Appellee.

No. 93–CV–55.

District of Columbia Court of Appeals.

Argued March 8, 1994.

Decided June 2, 1994.

Jeffrey M. Goldstein, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel and Martin L. Grossman, Deputy Corp. Counsels, were on the brief, for appellant.

Howard L. Siegel, for appellee.

Before KING and SULLIVAN, Associate Judges, and MACK, Senior Judge.

KING, Associate Judge:

In this negligence action, seeking recovery for injuries sustained in a fall apparently caused by a loose water meter cover, the District of Columbia appeals the trial court's denial of its motion for judgment notwithstanding the verdict. We hold the trial court erred in not granting the District's motion and, therefore, we reverse and remand.

### I.

On May 1, 1989, Helen P. Smith ("Appellee") fell after stepping on an apparently loose water meter cover, suffering injury to her back and ankle.[1] She brought this action against the District of Columbia ("the District"), alleging that its employees had created the dangerous condition by failing to properly secure the water meter cover. Before trial, the parties stipulated that the District did not have notice of the loose cover and that the doctrine of *res ipsa loquitur* was not applicable.

Appellee presented the testimony of two witnesses, her neighbors Thomas Simpson and Eugene Jefferson. Each testified that on April 28, three days before appellee's fall, they observed District employees checking the water meter in front of appellee's home. Jefferson testified that he noticed that the employees used a special tool, described as a "little spike hammer," to remove the water meter cover. Simpson testified that he watched "meter people" remove the meter cover, put a pipe down into the water meter pit, and "listen into the pipe." Both Simpson and Jefferson acknowledged that they did not know whether the employees had re-

1. Appellee testified that she was leaving to take her granddaughter to school and as she unlocked her automobile, she "stepped back to put her [granddaughter] in and fasten her in, something slid under my feet, and before I knew anything, I was down in this [water meter] hole up to my waist, and I just proceeded to start[ ] . . . crying." A neighbor testified that she heard a scream and when she arrived appellee "was laying right beside the water meter, and the top of the water meter was near the meter and she was laying close to the meter."

placed the cover, and neither inspected the cover after the employees departed.

The District presented the testimony of Melvin Gray and Paul Waymer, two Department of Public Works ("DPW") employees. Gray, the Superintendent for Measurement Services of DPW, testified that the meter covers are "9 inches round" and weigh approximately five to seven pounds and that DPW employees use a special tool to open the meter covers. Gray also testified, however, that the meter covers can be opened with a variety of tools that are readily available to the public, not just the implement used by DPW. Waymer testified that the meter covers are easily removed and that anyone "could use anything to pop it up" and there had been times in the past when that had occurred. Waymer also testified that the last time he checked the water meter in front of appellee's home was in February 1989, some three months before appellee sustained her injury, and that he had properly secured the cover on the water meter pit at that time.[2]

At the close of appellee's case, and again at the close of its own case, the District moved for a directed verdict. The trial court denied both motions. After the jury returned a verdict in favor of appellee, the District moved for a judgment notwithstanding the verdict, arguing that appellee had failed, as a matter of law, to prove that the District was negligent. The trial court, without comment, denied that motion. This appeal followed.

## II.

It is well settled that "[a] motion for judgment notwithstanding the verdict under Super.Ct.Civ.R. 50(b) may be granted only when the evidence, viewed in the light most favorable to the nonmoving party, permits only one reasonable conclusion as to the proper judgment." *Washington Welfare Ass'n v. Poindexter*, 479 A.2d 313, 315 (D.C. 1984) (citation and internal quotation marks omitted). A judgment notwithstanding the verdict may only be awarded when "no juror could reasonably reach a verdict for the opponent of the motion." *McKnight v. Wire*

*Properties, Inc.*, 288 A.2d 405, 406 (D.C.1972) (citations and footnote omitted). "Thus, upon review of a judgment n.o.v., the question for us is not whether there is sufficient evidence in the record to support the findings and decision of the [trial] judge, but whether a jury of reasonable men [and women] could properly have reached a verdict in favor of appellant, the party upon whom the onus of proof was imposed." *Faniel v. Chesapeake & Potomac Tele. Co.*, 404 A.2d 147, 150 (D.C. 1979) (citation and internal modifications omitted).

■ It is also well settled that in negligence cases, such as the instant case, the plaintiff bears the burden of "establishing that a violation of the reasonable standard of care is the proximate cause of the injury sustained. The mere happening of an accident does not meet this burden." *District of Columbia v. Cooper*, 445 A.2d 652, 655 (D.C. 1982) (en banc) (citation omitted). While negligence is usually a question of fact for the jury, "if there [are] absolutely no facts or circumstances from which a jury could reasonably [find negligence]," then it becomes a question for the court, *McCoy v. Quadrangle Dev. Corp.*, 470 A.2d 1256, 1259 (D.C.1983), and "it is clear that the court may take that issue from the jury in appropriate cases." *Washington v. A & H Garcias Trash Hauling Co.*, 584 A.2d 544, 545 (D.C.1990). *See also In re Micheel*, 610 A.2d 231, 234 (D.C. 1992) ("negligence is ordinarily a question of fact for the fact-finder to resolve") (citation omitted); *Edison v. Scott*, 388 A.2d 1239, 1241 (D.C.1978) (per curiam) ("Negligence is a matter of proof to be established by competent evidence. It should not be 'assumed.'"). Moreover, "our inquiry is also disciplined by the consideration that where plaintiff's evidence invites the jury to speculate as to negligence or causation a directed verdict [should be] granted." *St. Paul Fire & Marine Ins. Co. v. James G. Davis Const. Corp.*, 350 A.2d 751, 752–53 (D.C.1976) (citation omitted).

■ Viewing the evidence in the light most favorable to appellee, we hold that she

---

2. The District also presented testimony of a DPW employee, who testified that there was no record of any District employee checking the meter in front of appellee's home on April 28, 1989.

did not, as a matter of law, present sufficient evidence from which a reasonable person could conclude that the District was negligent. The thrust of appellee's evidence was that three days prior to her injury, two of her neighbors saw two men, whom they described as uniformed District employees, open the water meter cover. Neither witness could testify whether the meter covers were, or were not, properly replaced, and no other evidence was presented concerning the state of the meter cover from the time the workers left the scene until appellee fell. Indeed, there is no description of the state of the cover at the instant appellee fell, other than appellee's statement that as she "stepped back ... something slid under my feet."

In contrast, the District presented evidence that meter covers are not excessively large (9 inches round) or heavy (five to seven pounds), that the covers could be easily removed without special tools, and that meter covers had been removed in the past by members of the public. It was not disputed that the meter cover was located in an area where the general public had full access to it.

In light of the stipulation that the District had no notice that the cover was not properly in place and that the doctrine of *res ipsa loquitur* does not apply, appellee's theory necessarily must be that the workers observed by her neighbors were District employees who failed to properly replace the water meter cover, that the water meter cover was in an unsafe condition at the time of the injury, and that that condition caused appellee to fall. In order for liability to follow from that, the jury would have to conclude that the dangerous condition, i.e., the loose or improper fit of the meter cover, was caused by the District's agents and not someone else in the intervening three days. The District contends that to premise liability on that basis would require the jury to speculate since there was no direct evidence that a dangerous condition was caused by its agents.

In support of that argument, the District asserts that "the case at bar is on all fours" with *Morrow v. City of Harlan*, 344 S.W.2d 401 (Ky.1961). Morrow stepped on a man-

hole cover "in the sidewalk at a street corner curb and it 'rolled or tilted.' He dropped into the hole up to his arms." *Id.* at 402. Morrow established that city workers had been cleaning the manhole "thirty or thirty-two hours before the accident." *Id.* Morrow did not, however, present any "evidence of a defective condition of the manhole cover or that the workmen had left the cover loose or out of place." *Id.* The trial court granted a directed verdict in favor of the municipality. The Kentucky Court of Appeals affirmed the trial court, holding that

[Morrow] merely proved the manhole lid was loose and tilted when he stepped on it. There was too long a time intervening since the city workmen had the manhole open for a reasonable inference that they did not replace it in a safe condition. It would be a mere conjecture they did not, and liability cannot be placed on conjecture or speculation.

*Id.* at 403 (citations omitted). The court further concluded that "[t]here was too great an opportunity for a third party's independent and intervening culpable act for the law to pin liability on the city for [Morrow's] unfortunate accident." *Id.*

On the other hand, appellee relies on *Harding v. City of Highland Park*, 228 Ill.App.3d 561, 169 Ill.Dec. 448, 591 N.E.2d 952 (1992), where the plaintiff was injured on January 22, after she stepped on a water meter cover, which gave way, causing her to fall into the pit's opening. The meter cover was located in front of Harding's residence and maintained by the city. Harding presented testimony that in late December or early January a city van was parked in front of her home. "Two men dressed in winter coats were standing around the opening of the water meter lid, which had been removed. The men were looking into the pit." *Id.*, 169 Ill.Dec. at 452, 591 N.E.2d at 956. Based on that testimony, the Illinois court held that "there was evidence that the dangerous condition of the meter pit ... was created by defendant's employees." *Id.*, 169 Ill.Dec. at 455, 591 N.E.2d at 959.

The holdings in *Morrow* and *Harding* cannot be reconciled. In each case, apparent agents of the municipality were observed

taking some kind of action with respect to the utility cover in question. In each case, there was no evidence that the cover was not properly replaced. In *Morrow*, where the injury occurred less than a day-and-a-half after the workers departed, the court held that a finding of negligence would be based on conjecture. *Morrow, supra*, 344 S.W.2d at 403 (citations omitted). The *Harding* court reached a contrary result even though the time lapse between the contact with the meter cover by the agents of the municipality and the later injury was considerably longer than the time increment in *Morrow. Harding, supra*, 169 Ill.Dec. at 455, 591 N.E.2d at 959. The *Harding* court did not explain the reason it reached the result it did, and we find no reasonable basis for such a conclusion. We agree with the court in *Morrow* that any inference that the city employees did not properly replace the cover would be mere conjecture. Although not precisely on point, we are buttressed in our conclusion by holdings in our cases which present circumstances similar to, but not the same as, those presented here.

For example, *Harris v. Safeway Stores, Inc.*, 329 A.2d 436 (D.C.1974), involved an action brought by a grocery store customer who fell while she was in the store. The customer and her daughter both testified that "they noticed what they believed to be wax on the floor where Mrs. Harris fell." *Id.* (footnote omitted). The store manager testified that the store floor was mopped and swept daily and waxed periodically. *Id.* The jury returned a verdict in favor of Harris and the trial court granted Safeway's motion for judgment notwithstanding the verdict. *Id.* at 437. We affirmed, holding that "[t]o maintain a successful action in tort, there must be proof of more than the mere happening of a fall causing injury." *Id.* (citations omitted). We also observed that "there [was] no evidence on the basis of which the jury could have found negligence without speculating. Speculation is not the province of the jury."

*Id.* (citations and internal quotation marks omitted).

Similarly, in *S. Kann's Sons Corp. v. Hayes*, 320 A.2d 593 (D.C.1974), we reversed the trial court's denial of a motion for a directed verdict. In that case, Hayes suffered injuries after falling on the stairs of appellant's store. Hayes testified that the outside edge of the stairs was shiny, but that she did not see any foreign substance on the steps or that the steps were slippery. *Id.* at 594. We concluded that there was "no logical way that one can determine from the evidence in this case the proximate cause of the accident. The lack of evidence as to negligence ... leaves one to speculate as to what happened; this, the trier of fact is not permitted to do." *Id.* at 595 (citation omitted). We held that simply because an accident took place does not, without more, establish liability and that a directed verdict should have been granted. *Id.*

Based on *Morrow* and our own cases, and given the evidence presented by appellee, we conclude that a fact-finder could not reasonably infer negligence on the part of the District.[3] *See Barrett v. Harris*, 406 A.2d 1266, 1267 (D.C.1979) (if evidence permits only one reasonable inference to be drawn, the issue is one for the trial court) (citation omitted). As in *Morrow*, there was no evidence that District workers negligently replaced the water meter cover. Moreover, the passage of time was greater than that found in *Morrow*, where the court held that a conclusion that the workers left the manhole in an unsafe condition was conjectural. We hold, therefore, because of the absence of direct evidence of negligence and because of the lapse of time, the jury could not reasonably infer that District employees had negligently replaced the water meter cover. *See Harris, supra*, 329 A.2d at 437 (no evidence of negligence, without speculating, requires an entry of judgment notwithstanding the verdict) (citations omitted). As the *Morrow* court noted, the time lapse left "too great an opportu-

---

**3.** A better case supporting an inference of negligence could be made if the water meter cover could only be removed by using a tool not available to members of the public. *See, e.g., Cross v. City of Dallas*, 581 S.W.2d 514, 516 (Tex.Civ.App. 1979) (a key, available only to city workers, was

the only method of removing water meter covers without obvious damage to cover); *Gordon v. Provo City*, 15 Utah 2d 287, 391 P.2d 430, 432 (1964) (five-sided bolt, requiring special tool, made it "more difficult to grip than ordinary nuts").

nity" for an "independent and intervening culpable act for the law to pin liability" on the District for appellee's unfortunate accident. *Morrow, supra*, 344 S.W.2d at 403.

In sum, we hold that because appellee did not prove that District employees were negligent, there was "no evidentiary foundation on which [the jury could] predicate intelligent deliberation and reach a reliable decision." *S. Kann's Sons Corp., supra*, 320 A.2d at 595 (quoting *Liberty Mutual Insurance Co. v. Staten*, 201 A.2d 528, 530 (D.C.1964)). Therefore, the trial court erred in submitting this case to the jury and in denying the motion for judgment n.o.v. Accordingly, we reverse and remand with direction to the trial court to enter a judgment notwithstanding the verdict.

*Reversed and remanded.*