**Diane SHERMAN, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 93–CV–668.**

District of Columbia Court of Appeals.

Submitted Dec. 19, 1994.
Decided Feb. 6, 1995.

Samuel C. Hamilton, with whom Tilman L. Gerald, Silver Spring, MD, and Winfred R. Mundle, Washington, DC, were on the brief, for appellant.

Vanessa Ruiz, Corp. Counsel at the time the brief was filed, with whom Charles L. Reischel, Deputy Corp. Counsel, and Edward Schwab, Asst. Corp. Counsel, Washington, DC, were on the brief, for appellee.

Before WAGNER, Chief Judge, KING, Associate Judge, and GALLAGHER, Senior Judge.

KING, Associate Judge:

In this negligence action, appellant Diane Sherman ("Sherman") seeks reversal of the grant of summary judgment in favor of appellee, the District of Columbia ("District"). Sherman contends that summary judgment was improper because the affidavit submitted by the District reveals the existence of a disputed material fact—whether an employee of the District created the unsafe condition which caused Sherman's injuries. We agree, and for the reasons set forth below, we hold that the District did not meet its burden of demonstrating the absence of any material disputed fact. Accordingly, we reverse the trial court's grant of summary judgment in its favor.

1. The record does not describe the condition of the water meter lid, but merely states that Sherman "fell directly into a water meter hole that was left uncovered...."

2. On appeal, Sherman contends that Judge Greene was precluded from granting relief to the District on its Motion for Reconsideration of its Second Motion to Dismiss or, In the Alternative, for Summary Judgment, because Judge Michael Rankin's earlier ruling on the District's Second Motion was "the law of the case." We reject appellant's contention for three reasons.

First, the appellant did not raise the "law of the case" argument in the trial court and we will not address it on appeal. *See, e.g., B.J.P. v. R.W.P.*, 637 A.2d 74, 78 (D.C.1994) ("review will normally be confined to matters appropriately submitted for determination in the court of first resort. Questions not properly raised and preserved ... [below] will normally be spurned on appeal.") (citation omitted); *Washington v. A & H Garcias Trash Hauling Co.*, 584 A.2d 544, 546 n. 1 (D.C.1990).

I.

On March 24, 1988, at approximately 8:30 p.m., Sherman sustained injuries to her legs and knees when she fell into an allegedly uncovered water meter hole located between the street curb and the sidewalk at 905 Hamilton Street, N.E., Washington, D.C.[1] Records of the Department of Public Works ("DPW") indicated that the water meter at issue was "read" by one of its employees, Victor Brown ("Brown"), earlier that same day. Nearly four years later, on March 16, 1992, Brown averred in an affidavit filed with the District's Summary Judgment Motion that:

> In order to read such a meter, it is necessary to remove a metal lid which covers the water meter hole and then re-secure this lid after reading the meter. *To the best of my recollection*, I properly resecured the lid to the water meter hole after reading the meter in front of 905 Hamilton Street, N.E., on March 24, 1988.

(emphasis added).

On April 2, 1993, Judge Greene entered summary judgment in favor of the District, ruling that: (1) the District was without notice of the defective condition of the water meter; (2) there was no evidence to support the inference that an agent of the District caused the unsafe condition; and (3) res ipsa loquitur is inapplicable as a matter of law.[2] We agree with the trial court's

Second, Judge Rankin's June 15, 1992, order denying the District's Second Motion to Dismiss or, In the Alternative, for Summary Judgment, assertedly for "res ipsa loquitur possibilities," is not in the record, nor was it designated by Sherman to be included. Therefore, the record does not authoritatively demonstrate the basis for the denial of the motion which ostensibly established the "law of the case." *See Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982) (burden is on appellant to present a record sufficient to show affirmatively any error claimed).

Finally, the grounds for the District's Motion for Reconsideration of its Second Motion before Judge Greene were largely different from the ground asserted in its Second Motion before Judge Rankin. The primary negligence ground, which is the basis for our reversal of the trial court, was raised by the District for the first time in its Motion for Reconsideration of the Second Motion before Judge Greene. Therefore, there was no contrary ruling on the primary negligence ground when Judge Greene ruled upon it,

resolution on the first and third grounds;[3] however, we hold that Brown's equivocal affidavit is insufficient by itself, on a motion for summary judgment, to refute the inference that an agent of the District caused the unsafe condition of the water meter cover. Thus, there remains a disputed material fact: did the District's agent create the hazardous condition which caused the injury?

## II.

■■■ A motion for summary judgment should be granted only if "(1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, could not find for the nonmoving party, (3) under the appropriate burden of proof." *Galloway v. Safeway Stores, Inc.*, 632 A.2d 736, 738 (D.C.1993), (citing *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980)). The moving party bears the burden of clearly "demonstrating the absence of a material factual dispute and entitlement to judgment as a matter of law." *Burt v. First American Bank*, 490 A.2d 182, 185 (D.C.1985); *Galloway*, 632 A.2d at 738. If the moving party meets its burden, "it is incumbent upon the non-moving party to show that such an issue

exists" in order to defeat the motion. *Galloway*, 632 A.2d at 738; *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C. 1991). However, "if the moving party does not meet its initial burden, summary judgment must be denied even where the opponent comes forth with nothing." *Burt*, 490 A.2d at 185 (citation omitted); *accord*, *Williams*, *supra* note 3, 646 A.2d at 963. In reviewing a trial court order granting a motion for summary judgment, this court conducts an independent review of the record, and applies the same standard of review used by the trial court in the first instance. *Griva v. Davison*, 637 A.2d 830, 836 (D.C.1994); *Burt*, 490 A.2d at 184–85.

■■■ The only viable theory of negligence remaining to Sherman on these facts is one of primary negligence; *i.e.*, having a duty to replace the water meter cover securely, District employee Brown failed to do so. *See District of Columbia v. Smith*, 642 A.2d 140, 142–43 (D.C.1994) (District would be liable if plaintiff could prove, without requiring jury to speculate, that District's agents caused "the loose or improper fit of the meter cover"). It is axiomatic that the District is ordinarily liable for the negligence of its employees. *See District of Columbia v.*

and the "law of the case" doctrine does not apply. *See Gordon v. Raven Sys. & Research, Inc.*, 462 A.2d 10, 12 (D.C.1983) (" 'law of the case' doctrine bars a trial court from reconsidering *the same* question of law that was presented to and decided by another [judge] of coordinate jurisdiction. The analysis focuses on whether the question initially decided is *substantially the same* as the issue being presented") (citation omitted) (emphasis added).

3. We agree with the trial court that res ipsa loquitur is inapplicable in this case as a matter of law. Sherman alleged that the District was negligent under a theory of res ipsa loquitur because a special tool, under the exclusive control of the District, was required to open the water meter. There is no factual support in the record for the contention that a special tool is necessary to remove the water meter cover in question, although the need for such a tool was referred to in both Sherman's brief and in her Memorandum of Points and Authorities in Opposition to Defendant's Motion for Reconsideration, filed in the trial court. Assuming, without deciding, that the need for a special tool to remove the cover would be *sufficient*, the *mere assertions* by counsel for Sherman would not be enough to establish the

necessary element of exclusive control to sustain a negligence action under res ipsa loquitur. *See Marshall v. Townsend*, 464 A.2d 144, 145 (D.C. 1983) ("Res ipsa loquitur permits an inference of negligence where plaintiff establishes that: (1) an event would not ordinarily occur in the absence of negligence; (2) the event was caused by an instrumentality in defendant's exclusive control; and (3) there was no voluntary action or contribution on plaintiff's part."); *Hackett v. District of Columbia*, 264 A.2d 298, 300 (D.C.1970) (same; res ipsa loquitur inapplicable because "[t]he District of Columbia does not exercise exclusive control over this type of manhole cover").

We also agree that the trial court correctly ruled that the District cannot be held to have had notice of a defect in the water meter because the District submitted an affidavit confirming that it had not received any complaints regarding the meter, and Sherman offered no evidence to rebut that assertion. *See Williams v. District of Columbia*, 646 A.2d 962, 963 (D.C.1992) (without any evidence to the contrary from appellant, the District's affidavit claiming it had no notice of defect was sufficient to establish the District's lack of actual or constructive notice of a defective condition).

*Davis,* 386 A.2d 1195, 1202 (D.C.1978) ("It is settled that the District of Columbia may be sued under the common law doctrine of respondeat superior for the torts of its ... [employees] acting within the scope of their employment."); *Scott v. District of Columbia,* 493 A.2d 319, 322 (D.C.1985). Thus, to preclude summary judgment on a theory of primary negligence, there must be evidence from which a jury could reasonably conclude that Brown, the District's agent, negligently failed to secure the meter cover. *See Smith, supra,* 642 A.2d at 142–43; *Lee v. Jones,* 632 A.2d 113, 115 (D.C.1993) ("[t]he requisite showing of a genuine issue for trial is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts.") (citation omitted). Proof that the District had notice of the defective condition is irrelevant here, where liability is premised on the primary negligence of the District's agent. *See, e.g., Harding v. City of Highland Park,* 228 Ill.App.3d 561, 169 Ill. Dec. 448, 455, 591 N.E.2d 952, 959 (1992) (no actual or constructive notice is required where municipality's agent causes the hazardous condition).

To resolve this issue we must examine the facts supplied by the District to determine whether it met its burden of showing, by a preponderance of the evidence, that Brown did not create a hazard when he went about securing the meter cover which he admittedly removed and into which appellant fell within hours thereafter. *See Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979). The only evidence on that point was Brown's affidavit, submitted four years after he read the meter where the injury occurred, in which he stated that to "the best of [his] recollection," he re-secured the meter cover. Reviewing that statement, as we must, in the light most favorable to Sherman, we conclude that such equivocation on Brown's part, especially so long after the event in question, does not firmly establish that he re-secured the meter cover. Rather, it creates a question over which reasonable men and women could differ, and thus, whether Brown created the hazard is an issue that should be

resolved by the fact-finder. In our view, if Brown were to testify at trial, exactly as he related in his affidavit, a jury would be free, in light of his own stated uncertainty, to accept or reject his assertion that he properly secured the meter cover. *See Patrick v. Hardisty,* 483 A.2d 692, 697 (D.C.1984) ("[t]he highly ambiguous factual record in this case creates questions for the trier of fact"); *McCoy v. Quadrangle Dev. Corp.,* 470 A.2d 1256, 1259 (D.C.1983). The fact that Sherman did not file affidavits or other documents to refute Brown's affidavit is not fatal, because the ambiguity in Brown's affidavit is such that it could not, standing alone, establish that Brown did not create the hazard. *Williams, supra,* 646 A.2d at 963; *Burt, supra,* 490 A.2d at 185.

The District's reliance on *District of Columbia v. Smith, supra,* to support its contention that the trial court properly granted its motion for summary judgment is misplaced.[4] In *Smith,* the plaintiff brought an action against the District for failing to properly secure a loose water meter cover through which she had fallen. *Smith,* 642 A.2d at 140. The records of the DPW indicated that no District employee had recently checked the meter in question, although two witnesses testified that they had observed two people, whom they characterized as District employees, removing the water meter cover three days before Smith was injured. *Id.* at 140, 141 n. 1. The record in *Smith* also contained evidence that the meter cover was "9 inches round," weighed approximately five to seven pounds, and could "be opened with a variety of tools that are readily available to the public, not just the implement used by DPW." *Id.* at 141. There was also testimony that there had been reported instances of citizens removing meter covers of that type. *Id.* Because of (1) the lack of any direct evidence of negligence by the District employees; (2) the three-day interval between the time the workmen, who were asserted to be District employees, reportedly had contact with the meter, and Smith's fall; and (3) the fact that anyone could have tam-

---

**4.** The trial court had no occasion to consider the applicability of *District of Columbia v. Smith* to the instant case, because *Smith* was decided

fourteen months after Judge Greene granted the District of Columbia's motion for summary judgment.

pered with the meter after the workmen were observed at the meter, but before the injury, we held that a finding that District employees negligently replaced the cover could only be based on speculation, and thus, the District was entitled to a judgment notwithstanding the verdict. *Id.* at 143–44.

In contrast, the record in this case: (1) raises a question of material fact regarding the primary negligence of a District employee; (2) presents a time lapse of hours, rather than days, between the District employee's removal of the meter and Sherman's fall; and (3) contains no evidence of the size of the meter cover or whether it could be opened by someone other than DPW employees. In short, because there is no evidence that someone other than a District employee could have tampered with the meter and the time lapse between Brown's meter reading and Sherman's fall was relatively brief, the possibility that a third person created the hazard is significantly less likely than under the circumstances present in *Smith.* We therefore conclude that on these facts, a jury could reasonably infer, without impermissibly relying on speculation as the jury had to have done in *Smith,* that District employee Brown negligently replaced the water meter cover. Consequently, *Smith* provides no support for the District's contention that the grant of summary judgment was proper.

In sum, we hold on this record that because the District did not meet its burden of proving that no reasonable juror could find that an agent of the District created the hazardous condition, a grant of summary judgment for the District was improper. *Galloway, supra,* 632 A.2d at 738. Accordingly, the judgment of the trial court is

*Reversed.*