Anton BERK, Appellant,

v.

Gerald H. SHERMAN and Jane M. Eldredge, Appellees.

No. 94–CV–423.

District of Columbia Court of Appeals.

Argued Sept. 15, 1995.

Decided Sept. 5, 1996.

Richard A. Gross, with whom Stephen Leventhal was on the brief, for appellant.

David P. Durbin, Washington, DC, for appellees.

Before FARRELL, KING, and RUIZ, Associate Judges.

KING, Associate Judge:

In this legal malpractice action stemming from representation of a partnership formed to sell real property, Anton Berk ("Berk"), one of the two partners, seeks reversal of the grant of summary judgment in favor of the attorneys who represented the partnership, Gerald H. Sherman and Jane M. Eldredge ("partnership counsel"). Berk contends that the trial court erred in granting summary judgment first because under the Maryland Uniform Partnership Act ("UPA"),[1] the partnership, although "dissolved" had never "wound-up" its business, and thus he had standing to bring suit on a claim belonging to the partnership. Second, Berk contends that under the UPA, he had standing to sue as an individual.[2] Finally, Berk contends the trial court erred in concluding that, under Maryland case law, the use of the word "approximately" in a purchase agreement ("contract") drafted and negotiated by partnership counsel on behalf of the partnership, signified that the contract was a sale of property "in gross," rather than "in acreage."[3]

1. The Uniform Partnership Act as drafted by the National Conference of Commissioners on Uniform State Laws was first drafted and approved in 1914. The UPA has been adopted in every State except Louisiana. A Revised Uniform Partnership Act ("RUPA") was approved by the American Bar Association House of Delegates in August 1994. *See* 2 ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP (1995 Supp. Prefatory Note at 237–38).

2. As we reverse on the first ground, we need not reach this issue.

3. For the reasons stated below we do not address this point. The issue is before us because the trial judge, in an effort to aid this court's review, also addressed the merits of all of the contentions made by partnership counsel in their motion for summary judgment. The trial court essentially rejected most of those contentions; however, with respect to this issue the court observed

Defendants' assertion that as a matter of law they cannot be found negligent in their draft of the purchase agreement because the contract was for a sale in which all of the parties agreed to risk a non-material variation in the acreage because no one knew the exact size of the partnership's tracts—and the use of the word

"approximately" to describe the size of the partnership's parcels meant that the sale of the property was "in gross" so that the precise statements in the purchase agreement as to the numbers of acres as to each parcel were merely a matter of description and not of the essence of the contract—is a more troubling issue. While the law of Maryland is less than clear on this issue, this court is persuaded that, based upon the undisputed material facts here, the use of "approximately" should be construed as a matter of law to signify that the contract was "in gross" rather than per acre because the parcel size variation which led to the dispute between the partnership and Winchester Homes was quite small.

We do not regard this statement by the trial judge to constitute an alternative ground for the grant of the summary judgment motion, nor do the parties, as each has referred to these remarks as "dicta." Inasmuch as we reverse on other grounds, we need not decide this issue. When, and if, the issue is revisited by counsel and the trial court, we invite their attention to the following authorities: *Goettee v. Steele*, 71 Md.App. 520, 526 A.2d 626 (1987), *rev'd on other grounds*, 313 Md. 11, 542 A.2d 847 (1988); *Board of Educ. of Charles County v. Plymouth Rubber Co.*, 82 Md.App. 9, 569 A.2d 1288, 1296 (1990). The

For the reasons set forth below, we hold that, in general, partnership law, as applied under Maryland's [4] Uniform Partnership Act, permits enforcement of a partnership's claim after dissolution of the partnership, and in particular, that Berk has a right as a general partner to enforce a claim of alleged negligence against the partnership counsel. Accordingly, we reverse the trial court's grant of summary judgment.

## I.

Viewed in the light most favorable to Berk, the party opposing the grant of summary judgment, *see Burch v. Amsterdam Corp.*, 366 A.2d 1079, 1081 (D.C.1976), the record reveals the following: Berk, and his sister, Debra Greenwald ("Greenwald") formed a Maryland general partnership, GB Associates ("partnership"), on February 5, 1988, for the sole purpose of disposing of four plots of undeveloped land in Montgomery County, Maryland ("property") owned by them, for the profit and benefit of the partners. Gerald Sherman and Jane Eldredge are attorneys who represented Greenwald personally before the formation and during the life of the partnership. Following the formation of the partnership, Sherman and Eldredge also represented the partnership. Berk, however, was represented by other counsel, during the formation of the partnership.

The signed partnership agreement designated Greenwald as the managing partner with exclusive management and control and an irrevocable power of attorney from Berk to convey the partnership's real property. The only limitation on her authority was that Greenwald could not sell the property for a price below its appraised value of $7,123,650 without Berk's approval. By the terms of the agreement, the partnership "shall terminate the date on which the [p]artnership does not have beneficial ownership of any [p]artnership [r]eal [p]roperty."

On August 25, 1988, the partnership entered into a purchase agreement with Winchester Homes, Inc. ("Winchester") for the sale of all the partnership property for a sum of $14,130,000. The contract described the acreage in "approximations," and by reference to tax maps and parcel numbers. All four plots were outlined in red on an attached plat. Of significance with respect to this case, the largest tract was stated as containing "approximately 213.95 acres." Winchester provided a cash deposit of $1.25 million to designated escrow agents. The sale was scheduled to close on a date to be mutually agreed upon, between December 26, 1988 and January 5, 1989.

In December 1988, Winchester requested an extension of the closing date, which was opposed by Berk. Greenwald, under her powers as managing partner, and on advice of Sherman, granted Winchester the extension ("first amendment to purchase agreement") on December 23, 1988, upon payment of additional interest and an increased deposit. The first amendment noted a discrepancy in the property's acreage (the largest parcel was actually 208.80 acres, not 213.95), although it specifically referred back to the contract, which was "to be read and considered part hereof." Closing was set for no later than March 10, 1989.

In February 1989, Winchester, pointing to the discrepancy in acreage, demanded a price reduction of $2 million. Ultimately, Greenwald, as managing partner and on advice of partnership counsel, agreed to a price reduction of $630,000. The new sales price, re-

trial court should also consider whether the document misdescribes both the total area *and* the boundaries and if so, whether it would matter whether the contract calls for a sale of property "in gross" or "in acreage." In any event, a conclusion that "approximately" means a sale "in gross," does not resolve Berk's alternative claim of negligence in the negotiation of the reduced price.

**4.** In his brief, Berk observes that the parties and trial court agreed, *sub silentio*, that Maryland law would apply and the trial court applied Maryland partnership law. Partnership counsel does not contend otherwise; therefore, we have applied Maryland partnership law in our analysis of the issues presented. *See Henderson v. Snider Bros.*, 439 A.2d 481, 485 (D.C.1981). Because we view the legal principles to be relatively uncomplicated, we perceive no need to certify these questions of law to Maryland's Court of Appeals, as permitted under D.C.Code § 11-723(h) (1995 Repl.) (permitting certification of issue of law to highest court of any State). *See Penn Mut. Life Ins. Co. v. Abramson*, 530 A.2d 1202, 1206 (D.C. 1987) (certification is permissive).

duced from $14,130,00 to $13,500,000, allowed the parties to avoid litigation and to close the deal at a price substantially higher than the next best offer, and in partnership counsels' view, still above the property's "true market value."

On March 10, 1989, a second amendment, prepared by partnership counsel, was signed by Berk, Greenwald, and Winchester, which acknowledged the 10 acre discrepancy in the descriptions as the basis for the price reduction, and attributed some fault to the title company. Berk and Greenwald contemporaneously agreed to reserve their rights to assert claims against each other, regardless of their consent to the second amendment. As a result the sale was completed, and Berk received a net gain of $6,127,039.89 and Greenwald received a net gain of $6,124,765.95.

Berk then demanded that Greenwald, as managing partner, bring an action against partnership counsel for malpractice in preparing the documents or, in the alternative, for recommending a price reduction because of the discrepancy in acreage. Greenwald declined to do so. Berk filed suit against Greenwald in the Circuit Court of Montgomery County, Maryland.[5] Berk alleged breach of contract, breach of fiduciary duty, gross negligence, self-dealing, fraud, and willful misconduct. The dismissal of that action with prejudice was affirmed on appeal in 1993.[6]

Contemporaneous with his Maryland action, on December 16, 1991, Berk filed the instant action against partnership counsel on behalf of himself and the partnership. Berk sought damages for: (1) negligence in drafting the contract for sale; (2) negligent legal advice in connection with Winchester's demand for a reduction in the sales price; and

(3) breaches of fiduciary duty and contract. The amount prayed for was the difference between the original sale price and the reduced price agreed to after the acreage discrepancy was discovered.

On March 3, 1994, the trial court granted summary judgment in favor of partnership counsel, ruling that: (1) a lawsuit cannot be initiated on behalf of a "nonexistent" partnership even if the partnership only had been dissolved but not terminated, and (2) that Berk was not represented personally nor as an individual partner by partnership counsel but only derivatively as a partner of GB Associates, and thus was without standing to pursue claims of negligence, breach of contract, and breach of fiduciary duty against partnership counsel.

■ First, we conclude that the trial court erred in holding that this action could not be initiated on behalf of this partnership because the partnership had become nonexistent. A partnership does not become nonexistent upon completion of its stated business purpose, it only dissolves. *See* Md.Code Ann., Corps. & Ass'ns §§ 9–601–02 (1993). Although dissolution prevents future joint transactions of the partners, "the partnership is *not* terminated on dissolution, '*but continues until the winding up of partnership affairs is completed.*'" *See Resnick v. Kaplan,* 49 Md.App. 499, 434 A.2d 582, 586 (1981) (quoting § 9–601). "The right to compel liquidation after dissolution under [§ 9–609(a) ] exists 'unless otherwise agreed.'" *See Marr v. Langhoff,* 322 Md. 657, 589 A.2d 470, 477 (1991) (citation omitted). Here, there was an agreement, *inter se,* on when the partnership would cease its business purpose, but not on winding up and termination.[7]

■ Dissolution, wind up, and termination as applied under the Uniform Partnership

---

5. The date Berk filed his original complaint against Greenwald does not appear in the record. However, the Maryland Court of Special Appeals noted that on April 1, 1992, the Circuit Court granted Greenwald's motion to dismiss the complaint for failure to state a claim. On April 6, 1992, Berk filed a one-count amended complaint that was also dismissed. A second amended complaint was filed on June 26, 1992. On August 18, 1992, the Circuit Court dismissed that complaint with prejudice.

6. *Berk v. Greenwald,* No. 1611, 97 Md.App. 751. *on motion for reconsideration* (Md.Ct.Spec.App. filed Sept. 8, 1993), *cert. denied,* 333 Md. 200, 634 A.2d 61 (1993).

7. Termination under the UPA is distinct from the partnership's self-defined termination provision because under UPA, a partnership only terminates once both its business purpose and its wind up are complete.

Act are distinct, albeit not clearly defined phases in the demise of a partnership. When GB Associates ceased its business activities by the term of the partnership agreement,[8] the partnership dissolved. However, winding up and termination had only just begun. Nothing in the UPA precludes the filing, during the winding up of a partnership, of a lawsuit whose cause of action accrued during the existence of the partnership. *See Beckman v. Farmer,* 579 A.2d 618, 636 (D.C.1990); *Washington Medical Ctr., Inc. v. Holle,* 573 A.2d 1269, 1285 (D.C.1990); *Cheyenne Oil Corp. v. Oil & Gas Ventures, Inc.,* 204 A.2d 743, 745 (Del.1964); *see also* Md.Code Ann., Corps. & Ass'ns § 9–608 (right to wind up); ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP, § 5.03—5.07 (1994).

Second, we also conclude that it was error to grant summary judgment on the ground that Berk lacked standing to bring suit on a partnership claim. Even if Berk was not represented personally or as an individual partner by partnership counsel, but only as a "derivative" partner of GB Associates, as the trial court ruled, he had standing to bring this action on behalf of the partnership. *See* Md.Code Ann., Corps. & Ass'n § 9–301 (partner agent of partnership), § 9–606(a)(1) (power of partner to bind during wind up or dissolution), *see infra* note 11.

## II.

A party moving for summary judgment must demonstrate both that there is no genuine issue of material fact in dispute and that he is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c); *see also Young*

*v. Delaney,* 647 A.2d 784, 788 (D.C.1994); *Northbrook Ins. Co. v. United Servs. Auto. Ass'n,* 626 A.2d 915, 917 (D.C.1993); *Beckman, supra,* 579 A.2d at 626–27. We conduct an independent review, applying the same standard as the trial judge, and view the record "in the light most favorable" to the non-moving party. *See Sherman v. District of Columbia,* 653 A.2d 866, 869 (D.C. 1995); *Graff v. Malawer,* 592 A.2d 1038, 1040 (D.C.1991). The moving party discharges its burden of proof by demonstrating that, "if the case proceeded to trial[,] his opponent could produce no competent evidence to support a contrary position." *Beckman, supra,* 579 A.2d at 626 (citing to *Nader v. de Toledano,* 408 A.2d 31, 48 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980)). If the moving party fails to meet its initial burden, "summary judgment must be denied even where the opponent comes forth with nothing." *Sherman, supra,* 653 A.2d at 869 (citation omitted).

## III.

This appeal raises the following questions: (1) when is a partnership no longer entitled to enforce a claim? and (2) who may enforce the claim of a partnership? We will consider each question in turn.

## A. Right of Partnership to Enforce Claim

There is no dispute that the partnership agreement clearly defined its business existence. *See supra* note 8. Another provision entitled, "Partnership Termination," at para-

---

**8.** Term is defined in ¶ 5 of the partnership agreement as follows:

(a) The Partnership shall commence on the day first above written and shall continue until the earlier of the following events or dates at which time the Partnership shall terminate:
(i) the date on which the Partnership does not have beneficial ownership of any Partnership Real property or
(ii) the later of (i) four years from the day first above written, or (ii) the first date on which none of the Partnership Real Property is pledged, subject to mortgage or deed of trust, or in any other way encumbered or used as collateral, for the benefit of Berk or his affiliate with respect to a debt or debts

for which neither the Partnership nor Greenwald is personally liable.
(b) The death or legal incapacity of a Partner or the transfer of the partnership interest of a Partner pursuant to paragraph 12 shall not cause a dissolution or termination of the Partnership, but all of the rights of the deceased, incapacitated or transferor Partner (including, but not limited to, the rights to share in the net profits and losses of the Partnership, to receive Partnership distributions and to assign an interest in the Partnership pursuant to paragraph 12) shall devolve upon the Partner's legal representative or transferee, subject to the terms and conditions of this Agreement, and the Partnership shall continue unabated.

graph 14 of the agreement, established a procedure for evaluating and distributing partnership property once the "term" of the partnership had expired.[9]

■ The parties disagree, however, on when the partnership ceased to be an entity for purposes of pursuing any cause of action that had accrued to it. Partnership counsel contend that GB Associates no longer functioned as a legal entity after preparation of a "final" tax return and disbursement of remaining funds, a process that concluded by August 1, 1989. After that point, partnership counsel maintain, Berk had no standing to assert a claim on behalf of the partnership.[10]

On the other hand, Berk argues he had a statutory right under Maryland Code Ann., Corps. & Ass'ns §§ 9–606(a) and 608, to pursue claims on behalf of the partnership during the winding up of affairs following its dissolution. Section 9–606(a),[11] provides that after dissolution, a partner can bind the partnership by any appropriate winding up act or completion of unfinished business, except under certain circumstances not applicable here, while section 9–608[12] allows partners to wind up the partnership affairs.

Dissolution, according to Berk, occurred when GB Associates ceased its business activities after contracting to sell its real property. After the proceeds from the sale of the property were distributed, Berk demanded that the managing partner pursue claims that had accrued to the partnership against the partnership's counsel. After the managing partner declined to do so, Berk filed the action himself on behalf of the partnership and for himself. Therefore, contends Berk,

---

9.  14. *Partnership Termination.*

(a) Upon termination of the Partnership as provided in paragraph 5, all remaining property of the Partnership shall be distributed to the Partners in the following order of priority:
(i) in the event of an imbalance in Partnership accounts, to such Partner or Partners in such amounts as may be necessary to being [*sic*] the capital accounts into balance;
(ii) to all Partners in amounts that are proportionate to their percentages of Partnership interest;
(b) If distribution upon termination of the Partnership in accordance with the subparagraph (a) above cannot be made equitably through an allocation among Partners of undivided interests in Partnership property, then such property shall be distributed to Partners at its fair market value. Such fair market value shall be determined as follows: Berk and Greenwald shall select a mutually agreeable appraiser to determine the fair market value....
(c) If after complete distribution of all Partnership property, the remaining capital account of one of the Partners is greater than the capital account of the other Partner, the Partner with the lower capital account shall owe the other Partner an amount equal to....

10. We reject partnership's contention that preparation or even filing of the partnership's final tax return is tantamount to termination. A final tax accounting may be but one step in the process of wind up. Here, there is at least an unresolved claim belonging to GB Associates—the present cause of action. *See infra* note 13.

11. § 9–606 **Power of partner to bind partnership to third persons after dissolution.**

(a) *Power to bind.*—After dissolution, a partner can bind the partnership except as provided in subsection (c).
. . .
(c) *When partnership not bound after dissolution.*—The partnership is in no case bound by any act of a partner after dissolution:
(1) Where the partnership is dissolved because it is unlawful to carry on the business, unless the act is appropriate for winding up partnership affairs;
(2) Where the partner has become bankrupt; or
(3) Where the partner has no authority to wind up partnership affairs, except by a transaction with one who;
(i) Had extended credit to the partnership prior to dissolution and had no knowledge or notice of his want of authority; or
(ii) Had not extended credit to the partnership prior to dissolution, and having no knowledge or notice of his want of authority, the fact of his want of authority has not been advertised in the manner provided for advertising the fact of dissolution in subsection (a)(2)(ii) of this section.
Md.Code Ann., Corps. & Ass'ns § 9–606(a), (c).

12.  § 9–608 **Right to wind up.**

Unless otherwise agreed, the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs; provided, however, that any partner, his legal representative, or his assignee, upon cause shown, may obtain winding up by the court.

until the claimed cause of action [13] against partnership counsel is resolved, no final accounting or winding up of partnership affairs can occur.

The UPA, by its terms, has no express provisions relating to the enforcement of claims that have accrued to the partnership, the timing of a civil action brought on behalf of the partnership, or whether fewer than all the partners can sue on a partnership right. *See generally* BROMBERG & RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP, § 5.01–07. The Maryland courts and other state courts, however, have considered these issues and we will now turn to an examination of those authorities.

Termination of a partnership occurs *after* dissolution and wind up. *See* Md.Code Ann., Corps. & Ass'ns § 9–601.[14] *See Marr, supra,* 589 A.2d at 475; *accord, Washington Medical Ctr., Inc., supra,* 573 A.2d at 1269; *see generally* BROMBERG & RIBSTEIN, *supra,* §§ 501–504. The Maryland Code provides:

"Dissolution" means the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on of as distinguished from the winding up of the business.

Md.Code.Ann.Corps. & Ass'ns § 9–101(e).

■ Under the UPA, dissolution may occur in any of several ways. *See* Md.Code Ann. § 9–602.[15] Dissolution of GB Associates took place "by the termination of the definite term" and the "particular undertaking specified in the agreement." *See* Md. Code Ann., Corps. & Ass'ns § 9–602. We are persuaded by our reading of the Maryland Code and its case law, that dissolution, and not termination, occurred at the end of the term defined by the partnership agreement. *See Resnick, supra,* 434 A.2d at 582.

■ Once dissolution occurs, wind up begins. *See* Md.Code Ann., Corps. & Ass'ns § 9–604 (effect of dissolution on authority of partner). After dissolution, a partner can bind the partnership by any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution. *See Beckman, supra,* 579 A.2d at 636; Md. Code Ann., Corps. & Ass'ns § 9–606. "A partnership may sue ... in its own name following dissolution but prior to termination on completion of the wind-up of partnership affairs, since the wind up includes the satisfaction of partnership debts and the partnership does not terminate its existence by mere dissolution prior to winding up." *See* 59A Am.Jur.2d *Partnership* § 706 (1987). Thus, Berk was entitled to wind up the partnership affairs after dissolution. *See* Md.Code Ann., Corps. & Ass'ns §§ 9–601, 602, 604, 608 (1993).

■ Through an accounting, partners can enforce the duty of a co-partner to hold as trustee for the partnership any benefit derived from transactions connected with the formation, conduct or liquidation of the partnership, without destroying the partnership entity. *See Washington Medical Ctr., Inc., supra,* 573 A.2d at 1285; *see also* Md.Code Ann., Corps. & Ass'ns § 9–611 (rules for distribution in settling partnership accounts). "An accounting is also the penultimate event in the lifetime of the partnership. It follows dissolution and the winding up of partnership

---

Md.Code Ann., Corps. & Ass'ns § 9–608.

**13.** "A cause of action is an asset or property right of the individual to whom it belongs." *Taylor v. Swirnow,* 80 F.R.D. 79, 82 (D.Md.1978). Berk contends that in this case, the asset is a property right of GB Associates. We agree. *Cf. Rothberg v. Quadrangle Dev. Corp.,* 646 A.2d 309, 312–13 (D.C.1994) (right in cause of action passes to trustee as an asset of bankruptcy estate), *cert. denied,* —— U.S. ——, 115 S.Ct. 1382, 131 L.Ed.2d 235 (1995); *Beckman, supra,* 579 A.2d at 636 (pending cases in dissolving law partnership are uncompleted transactions ... and are therefore assets of the partnership); *Warren v. Chapman,* 535 A.2d 856, 859 (D.C. 1987) ("cause of action does not accrue until

after there has been a reasonably sufficient period of time in which to conduct an accounting").

**14.** § 9–601 **Partnership not terminated by dissolution.**

On dissolution, the partnership is not terminated, but continues until the winding up of partnership affairs is completed.

Md.Code Ann., Corps. & Ass'ns § 9–601.

**15.** Dissolution may occur without violation of the agreement between the partners, in contravention of the partnership agreement, or by any event making it unlawful for the partnership to carry on business, by the death of any partner, by the bankruptcy of any partner, or by decree of the court. *See* Md.Code Ann., Corps. & Ass'ns § 9–602—**Causes of dissolution.**

affairs, and marks the point at which ... the legal existence of the partnership terminates." *Washington Medical Ctr., Inc., supra*, 573 A.2d at 1285 (citing to D.C.Code § 41–129).[16] Furthermore, this court has repeatedly held, in interpreting our own UPA provisions, which are identical to those adopted in Maryland, that a partner has a right to an accounting upon dissolution, including, if necessary, a right to obtain the assistance of the court if such an accounting is refused. *See id.* at 1285 n. 25 (explaining why the drafters of the UPA broadened the ground for an accounting that is not contingent upon dissolution); *Warren v. Chapman*, 535 A.2d 856 (D.C.1987) (holding that cause of action for an accounting brought almost four years after dissolution of a partnership was not barred by laches because the partnership continued to wind up its affairs for at least two years). Although the Maryland courts have never addressed this precise issue, our resolution of it is in accord with the general rule. *See Washington Medical Ctr., Inc., supra*, 573 A.2d at 1285; *Warren, supra*, 535 A.2d at 859.

■ Berk brought this action two years and four months after dissolution, *i.e.*, two years and four months after the business purpose of the partnership had expired, based on a claim against partnership counsel that arose prior to dissolution. Contending this action was brought during the wind up phase of the partnership, Berk cites Section 9–608 of the Maryland UPA, as conferring the right and the duty to participate in the winding up process without the need for authorization from his co-partner.[17] Partnership counsel argues that Berk had no standing two years and four months later, to assert a claim on behalf of a nonexistent partnership.

Although statutes of limitations bar actions that are not raised within specified time periods, we are aware of no analogous partnership law, limiting the time for the winding up of partnership affairs. *Cf. Warren, supra*, 535 A.2d at 858–60. While it may be desir-

able to wind up partnership affairs within a reasonable amount of time and that "[a]bsurd results should be avoided," *see Doting v. Trunk*, 259 Mont. 343, 856 P.2d 536 (1993) (holding that partnership affairs ought to be wound up within a reasonable time), we cannot say that, as a matter of law, an unreasonable amount of time passed here when Berk first unsuccessfully tried to persuade, both by an oral request and then by legal action, the managing partner to pursue the cause of action that he himself later brought.

Under the UPA, dissolution, wind up, and termination represent three distinct phases in the existence of a partnership. The "termination" provision of the partnership's agreement effected dissolution, not wind up, of the partnership. Although dissolution prevents future contractual transactions of the partners, *see George Bert. Cropper, Inc. v. Wisterco Invs., Inc.*, 284 Md. 601, 399 A.2d 585, 592–93 (1979), the winding up process includes the satisfaction of partnership obligations. On review of the record before us, Berk and Greenwald never reached a final accounting, or wind up, of the partnership. Nothing in this record, nor in the applicable law, leads us to conclude that the partnership ceased its legal existence before Berk filed his claim. It follows that Berk is entitled to resolve whether the discrepancy in acreage that resulted in a reduced price to the partnership was the result of any alleged negligence of partnership counsel.

### B. Berk's Standing to Sue on Behalf of the Partnership

The trial court also ruled that Berk was not represented personally or as an individual partner by partnership counsel, but only derivatively as a partner of GB Associates, and thus, was without standing to pursue these claims against partnership counsel. Berk maintains, however, that even if he was only represented derivatively, he is an equal beneficiary of partnership counsels' legal representation. Essentially, Berk contends that when Greenwald, as managing partner, re-

---

**16.** Section 41–129 of the D.C.Code provides: On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.

This language is identical to Section 9–601 of the Maryland Code.

**17.** *See supra* note 12.

fused to bring suit against partnership counsel, his status as a partner of GB Associates enabled him to assert the claim. We conclude for the reasons discussed below that Maryland law and other authorities provide Berk standing to sue as a "derivative" partner.

■ We begin our analysis with partnership counsels' claim, based on two grounds, that Berk had no right to pursue this claim on behalf of the partnership. First, partnership counsel contend that because the Maryland court determined that Greenwald had acted within her discretion as the managing partner in declining to bring suit against partnership counsel, Berk could not legally assert the claims made in this case. The trial judge, however, rejected that contention, ruling that Berk was not collaterally estopped from suing partnership counsel because the issue litigated in Maryland courts was not the same issue as presented here. Inasmuch as the Maryland court did not consider Berk's standing to pursue the partnership's cause of action against partnership counsel in his capacity as a general partner during wind up, there is no basis for our reaching a different result from that reached by the trial judge.[18]

■ In order for issue preclusion to apply to a subsequent action, determination of an issue of fact or law must have been actually litigated and determined. *See Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 367 (D.C.1993); *Washington Medical Ctr., Inc., supra,* 573 A.2d at 1283. Because only facts and law regarding the managing partner's business judgment were determined in the Maryland court, no facts or law regarding partnership counsels' potential liability were resolved.

■ Second, partnership counsel argues that Berk voluntarily waived his right to bring an action when he entered into the agreement with Greenwald. In rejecting that contention, we note that partners are free to make agreements, *inter se,* that govern their respective rights. *See* Md.Code Ann., Corps. & Ass'n § 9–401 (rules determining rights and duties of partners); *see also Beckman, supra,* 579 A.2d 618, 627. While Berk and Greenwald did agree that management and control of the partnership business were to rest exclusively with Greenwald,[19] there was no agreement concerning the enforcement of partnership claims against third parties. Where there is an express agreement with respect to the duties of the managing partner, power and authority not specifically delegated by the other partners to the managing partner is presumed to be withheld. *See Allen v. Steinberg,* 244 Md. 119, 223 A.2d 240, 246 (1966).

■ In general, partnership law "treats all partners as if they are normally expected to be both investors and managers," or, as Clark characterized a partnership: "All for one, and one for all." *See* ROBERT CLARK, CORPORATE LAW § 1.2.4 (1986) (comparing the managerial power of partnerships with corporations). Absent an agreement to the contrary, all partners have equal rights to manage the affairs of the partnership and every partner is an agent of the partnership with respect to partnership business. *Id.*

■ Berk argues that the partnership agreement allowed Greenwald as managing partner of a *real estate* partnership to "develop, lease, sell and convey the property" but did not give her "sweeping power to limit any and all legal claims against a third party" merely because the claim arose out of the real estate transaction. Partnership counsel are third-party defendants who were not party to the agreement between Berk and Greenwald.

Berk's role as a non-managing partner is analogous to that of a limited partner. Like

---

18. Partnership counsel do not appeal the trial court's decision regarding collateral estoppel.

19. Partnership Management, ¶ 8 of the agreement, provided that the management and control of the Partnership business shall rest exclusively with the Managing Partner, Greenwald. Berk's consent was required to borrow and encumber Partnership assets to secure the repayment of the money so borrowed. Berk's approval was also required for any sale of Partnership Real Property where the price of such sale totalled less than the appraised value. The Maryland court determined that ¶ 8(c) insulated the Managing Partner from all liability except gross negligence, self-dealing, fraud, or willful misconduct.

a limited partner, Berk relinquished management and control over the partnership's daily business but he did not expressly relinquish his right to enforce partnership claims. In *Allen*, for example, a limited partner informed the managing partners that while she agreed to extend the partnership, she "[did] not ratify or confirm any of . . . acts done in the name of the partnership," reserving the right to take action for damages and unauthorized losses. *Allen, supra*, 223 A.2d at 247. In determining the authority not specifically delegated in a partnership agreement, Maryland's highest court held that activities not described as the purpose of a partnership are not delegated under a partnership agreement. *Id.* at 246–47. Like the limited partner in *Allen*, Berk agreed to actions of the managing partner, without relinquishing his right to enforce claims on behalf of the partnership.[20]

■ Other jurisdictions have reached the same result. For example, a federal district court has held that "[W]hen a partnership has been dissolved for any reason, any one partner can wind up the partnership affairs and collect the partnership assets." *See Goldstick v. Kusmiersky*, 593 F.Supp. 639, 643 (N.D.Ill., E.D.1984) (denying summary judgment motion where one former partner had capacity to sue and collect fees, a partnership asset, in winding up partnership affairs), *rev'd on other grounds, sub nom. Goldstick v. ICM Realty*, 788 F.2d 456 (7th Cir.1986). Because GB Associates was winding up its business, Berk was entitled to enforce a partnership claim that had accrued before dissolution. The right to wind up affairs of a partnership includes the duty and power to litigate claims for the partnership that arise out of transactions occurring prior

to dissolution. *See Cheyenne Oil Corp., supra*, 204 A.2d at 745 (general partners of limited partnership have right to sue for partnership claims arising out of transactions occurring prior to dissolution under New Jersey's Uniform Partnership Law and Uniform Limited Partnership Act); *see also* BROMBERG & RIBSTEIN, *supra*, at § 7.15.[21] Here, Berk's claim stemmed from a transaction that arose before dissolution and this action was filed before wind up was completed. Moreover, because there was no express delegation to the managing partner of the exclusive power to bring suit, Berk was entitled to pursue this claim on behalf of the partnership. Therefore, summary judgment was not appropriate.

## IV.

In sum, Berk has a right as a general partner to enforce a claim of alleged negligence against the partnership counsel. GB Associates did not cease to exist at the conclusion of its real estate transaction; it merely dissolved. Wind up then began and it was during this phase that Berk initiated a cause of action that accrued during the existence of the partnership. For all of these reasons, the order of the trial court entering summary judgment in favor of partnership counsel is

*Reversed.*

RUIZ, Associate Judge, concurring:

I concur in the result but disagree with the majority's reasoning. The majority reasons, first, that the partnership between Berk and his sister continued in existence even after partnership dissolution and a final tax accounting, and, second, that Berk had authori-

---

**20.** The weight of authority supports Berk's right to enforce a claim on behalf of the partnership. *See Allen, supra*, 223 A.2d at 247–48; *see also Marr, supra*, 589 A.2d at 470. Limited partners may sue on a partnership's cause of action. *See Allen, supra*, 223 A.2d at 240; *Jaffe v. Harris*, 109 Mich.App. 786, 312 N.W.2d 381, 383–85 (1981) (permitting derivative actions on behalf of partnerships by limited partners), *aff'd with modifications*, 126 Mich.App. 813, 338 N.W.2d 228, 230 (1983), *rev'd on other grounds*, 419 Mich. 942, 355 N.W.2d 617 (1984).

**21.** *See also Cates v. International Tel. & Tel. Corp.*, 756 F.2d 1161, 1179 (5th Cir.1985). (citing to Louisiana, New York, and Delaware cases). In *Cates*, Texas allowed the executrix of a dead partner, although not the last surviving partner, to initiate a suit on behalf of the partnership during wind up because of the improper, ulterior motives of the controlling partners. *Id.* The Texas court did not define what kind of impropriety would permit a minority partner to maintain a derivative suit but left open the possibility where there was a lack of good faith on the part of managing partners. *Id.* at 1179.

ty, on behalf of the partnership, to assert a partnership claim against the partnership's counsel during the wind up period. That reasoning goes against the Maryland Uniform Partnership Act, Md.Code Ann. §§ 9-606(c), -608 (1993), the express language of the partnership agreement, and the intent of the partners as evidenced by the rendering of a "final" tax accounting indicating the end of their limited partnership, the sole purpose of which had already been accomplished.

The majority's interpretation of Maryland law with respect to partnership termination and the right of a non-managing partner to sue on behalf of a partnership during wind up may well be wrong[1] and, for the reasons expressed below, I believe, unnecessary to resolution of this case. If it were necessary to decide those issues, I would certify the questions to the Maryland Court of Appeals because I do not think that the legal principles involved are as uncomplicated as the majority suggests and, as the majority recognizes, "the Maryland courts have never addressed this precise issue," *ante* at 217. *See* D.C.Code § 11-723(h) (1995) (permitting certification of issues of law to the highest court of any state in cases where the law of that state is determinative and there is no controlling precedent from that state).

In any event, although I disagree with the majority's analysis, I agree with the result, because Berk may bring the action against the partnership's former counsel in his personal capacity as an individual partner who was an intended beneficiary of the lawyers' services to the partnership and who was harmed as a result of counsel's alleged malpractice, breach of contract and breach of fiduciary duty. *Flaherty v. Weinberg*, 303 Md. 116, 492 A.2d 618 (1985).[2]

Berk's partnership with his sister had one purpose, to dispose of the property jointly owned by them. Although each of the partners was separately represented during the formation of the partnership, partnership counsel represented the partnership—and the partners' interests therein—in the sale of the property. Berk claims that, as one of only two partners in this sole purpose partnership, he was an intended beneficiary of partnership counsel's services and was directly harmed by partnership counsel's drafting mistakes and failure to negotiate a better price for the sale of the property. Once Berk's sister, as managing partner, declined

---

**1.** With respect to termination of the partnership, the majority does not say when the partnership would terminate, only that it had not terminated when Berk sued the partnership's counsel some two-and-a-half years after the purpose of the partnership had been achieved and a final tax accounting rendered. The majority thus interprets the words of the statute, "until the winding up of partnership affairs is completed," § 9-601, to mean that the partnership continues in a wind up posture not only for so long as there are outstanding partnership liabilities, for which there is some precedent under Maryland law in the case of law partnerships with continuing ethical obligations to their clients, *see Resnick v. Kaplan*, 49 Md.App. 499, 434 A.2d 582, 587 (Md.1981), but also for so long as there are any unliquidated partnership assets, for which the majority cites no support in Maryland caselaw.

With respect to Berk's authority to sue on behalf of the partnership, the majority relies on § 9-606(c), which binds a partnership to third parties for actions taken by a partner during wind up, "except where the partner has no authority to wind up partnership affairs"; and on section 9-608, which authorizes a partner to wind up the partnership's affairs "unless otherwise agreed." Thus, the statute, by its terms, does not override the partnership agreement. In this case, the partnership agreement clearly gave exclusive management and control over the partnership's affairs to Berk's sister, with only certain limited exceptions. *Cf. Allen v. Steinberg*, 244 Md. 119, 223 A.2d 240, 247 (1966) (noting that it is difficult to stretch specific authorization in a partnership agreement to "promote land development" and to "execute all necessary deeds, bills of sale or any and all other papers ... in order to effectuate the purpose of the said partnership" to include authorization to mortgage land or obtain unsecured loans). Therefore, Berk had "no authority to wind up partnership affairs" under § 9-606(c) because in the partnership agreement he had "otherwise agreed," as provided in § 9-608, that his sister was the managing partner with such authority.

**2.** In our view, the scope of duty concept in negligence actions may be analogized to the third party beneficiary concept in the context of attorney malpractice cases. Thus, to establish a duty owed by the attorney to the nonclient, the latter must allege and prove that the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship. In this regard, the test for third party recovery is whether the intent to benefit actually existed, not whether there could have been an intent to benefit the third party. *Flaherty, supra*, 492 A.2d at 625.

to bring the claim on behalf of the partnership, it was abandoned as a partnership asset[3] and its enforcement devolved on the individual partners. A question would then arise whether the partnership's failure to assert the claim can be used to estop Berk's action. That question, as well as the issue whether Berk can prove that he was an intended beneficiary of counsel's representation of the partnership involve as-yet-unresolved matters of fact appropriate for the trial court.

In light of those factual issues in dispute, at this summary judgment stage, because Berk is not precluded as a matter of Maryland law from bringing the action in his individual capacity, the litigation should proceed. If Berk were to succeed in proving that he was an intended beneficiary of counsel's representation of the partnership as well as the other elements of his asserted causes of action, he could recover in proportion to the interest he had in the partnership.

---

**3.** Berk's suit challenging the managing partner's decision not to sue partnership counsel was dis-

missed by the Maryland courts. *See ante* note 6.